THOMAS JESSOP *et al.*, Appellants, *v.* STEPHEN C. MILLER *et al.*,
Respondents.

One who is a mere surety, to enable another to prosecute or defend an action,
is not a person for whose benefit the action is prosecuted or defended, and is
not rendered incompetent as a witness, under section 299 of the Code of
Procedure.

Hence, a surety in the undertaking given by the plaintiffs in an action for the
claim and delivery of property, for the return of the property, is a competent
witness for the plaintiffs.

Where property is sold upon a condition, if the condition is not complied with
no title will pass from the vendor, and the purchaser will acquire none; nor
can he convey any title to his assignees.

The plaintiffs sold to W. a quantity of steel, at the price of $1,072.95, upon the
condition that it should be paid for by W.'s note, indorsed by J. C. & Co.
The property was sent forward to W. pursuant to his directions, subject to
the aforesaid condition. He received the property, but never performed the
condition. *Held* that the act of W. was tortious, and that he was liable to
the plaintiffs in trespass, for the unlawful taking of the property, and that an
action would lie against him without any previous demand.

But that as to the persons claiming the property as assignees of W. under an
assignment in trust for creditors, they having acquired possession of the
property innocently, without notice of any defect of title in W., an action
could not be maintained against them until after demand and refusal.

*Held, also,* that the assignees not being partners, a demand must be made upon
each, in order to maintain a joint action.

A demand and refusal do not constitute a conversion of property. They are
but evidence of a previous conversion.

A refusal to deliver property to the true owner, on demand, is evidence — in
the absence of all explanation — that the party received it with intent to set
the real owner's rights at defiance.

In such a case the jury will be justified in finding a conversion before suit
brought, although the demand and refusal were not made until after the com-
mencement of the suit.

A fraudulent purchaser of goods and assignees to whom he has assigned the
same in trust for creditors, are liable to a joint action by the vendor, to recover
the possession.

APPEAL from an order of the General Term of the third
district affirming an order of the Special Term granting a
new trial in this cause.

The action was for the claim and delivery of a quantity of
steel which the plaintiffs claimed to have sold to one White,

41

upon the condition that he should pay for the same in his notes indorsed by a firm in the city of New York, and which condition had never been complied with, and hence title had never passed to White. The answer contained a general denial of the matters alleged in the complaint, and White for himself set up, by way of affirmative defense, that the sale to him was absolute, and that he assigned the steel to the other defendants. Miller and Ferguson, the other two defendants, allege that White became absolute owner of the steel, manufactured a part or the whole of it into axes, and disposed of the same before the 8th December, 1852, at which time he assigned and transferred what remained of said property to said defendants, who thereby became the absolute owners thereof.

On the trial the plaintiffs offered Joseph Stagg as a witness, and he was objected to as incompetent on the ground that he was one of the persons for whose immediate benefit the action was prosecuted. It appears he was one of the sureties in the undertaking given for the return of the property in the action. The objection was overruled, and defendants' counsel excepted. The plaintiffs then gave evidence tending to prove the sale to the defendant White, of 7138 pounds steel at the price of $1,072.95, upon the condition that it should be paid for by said White's note indorsed by Johnson, Cornwell & Co., and that the property was sent forward to said White at Troy, pursuant to his directions, subject to the aforesaid condition; that he received the property but never performed the condition. The purchase of the steel was made on the 26th October, 1852, and was shipped to Troy on the 27th or 28th October. There were negotiations between said White and the plaintiffs' agents at New York, by whom the sale was made, as to the terms of payment of the notes to be given for the steel, down as late as 13th November, 1852. On the 6th of November, the plaintiffs' agents wrote to Thompson, Gale & Co., at Troy, to stop the steel in their warehouse. On the 8th of November, Thompson, Gale & Co. telegraphed the agents that White had removed the steel on the 6th November to

Cohoes, where he was carrying on the business of making axes. On the 8th December, 1852, said White made an assignment ·of all his property for the benefit of creditors, to Miller & Ferguson, who took possession of the property and entered on the discharge of the duties under the said trust.

Soon after the plaintiffs' agents heard of said assignment, one of them went to the place of business of White, at Cohoes, and found Miller, one of the assignees, in the office. The agent inquired whether the steel sold by the plaintiffs was used, or in bulk and cases, unbroken. Miller replied that it was all cut up or used up. After some further conversation, the agent went into White's warehouse and found a box of the steel, weighing 1,700 lbs., unbroken. The agent then returned into the office, and requested Miller to deliver up the steel so found, stating the sale on conditions, and the non-performance thereof. Miller refused to deliver, wishing first to see his attorney. The officer then went to the warehouse, with purpose to get possession of the steel, and they went into the warehouse and took the 1,700 lbs. identified as the steel sold by the plaintiffs. The property was delivered to the sheriff about 11 A. M., and the demand of Miller was made about 1 P. M., of the same day. No demand was made of Ferguson at any time. Besides the steel so taken as aforesaid, there was other steel in the shop formerly carried on by White, cut up and partially made into axes ; and it was so changed that its identity could not be traced. A witness by the name of Thorburn testified that he was plaintiffs' clerk and called on Miller about a week after the suit commenced and asked him to let him (Thorburn), and Frink (the deputy sheriff), look at the steel for the purpose of identifying that belonging to the plaintiffs. Miller refused to open the shop and let them go in. Testimony was given tending to show that steel of the description sold by the plaintiffs to White had been cut up and partly made into axes and sold by the assignees after suit brought. There was sold in all some 5,000 lbs.

The plaintiffs having rested, the defendant White moved to dismiss the complaint, on the ground that there was no evidence to show that any part of the property in question was in his possession or under his control when the action was commenced.

The counsel for Ferguson and Miller moved to dismiss the complaint on the ground that the steel was sold on the credit of Johnson, Cornwell, & Co., and not of White, and that no demand was made on either of the assignees till after the suit was commenced. Both motions were denied and the counsel excepted.

On the part of the defendants, the defendant White was called as a witness, and testified in substance that he had made an arrangement with Johnson, Cornwell & Co., dealers in steel, residing and doing business in New York, to furnish him with what steel he should want for some two years, and gave them a mortgage for some $30,000 to secure them; that in October, 1852, he applied to them for steel of a size which they did not have, and they told him to go amongst the dealers and get it. He accordingly called on the plaintiffs' agent and informed him of the arrangement with J., C. & Co., and that he was not bound to run round the streets after the steel. White and the plaintiffs' agent talked about his, (White's) buying ten cases. White told him he could give him the money for one case, and if it suited, could buy more. After getting home he sent for the case purchased, and his teamster told him there were ten cases at the warehouse. He afterward received the invoice for the ten cases. He subsequently commenced using the steel, and had used steel of the same size of that he got of the plaintiffs.

The defendants' counsel then asked the witness the following question: " When you bought the steel did you intend to pay for it ?" The question was objected to, and the objection was sustained by the court, and the counsel for the assignees excepted. Other evidence was given on both sides, but none of it has any bearing on the questions of law arising on this appeal.

The court charged the jury, amongst other things, that the assignees proceeded to execute the trusts under the assignment, assuming control over all the property in White's factory. And that if they should be satisfied from the evidence that the sale was not an absolute one to White, and that no title passed to him, the plaintiffs would be entitled to recover. That if the evidence satisfied them that at the commencement of the suit there was a detention of the property in question by the defendants, the plaintiffs were entitled to recover.

The assignees asked the court to charge the jury that there was no evidence to warrant them in finding that the whole of the steel claimed in this action ever come to the possession or under the control of the defendants Miller and Ferguson. The court declined so to charge, but charged that it was for the jury to say from the evidence, what amount of the steel had come into the possession or under the control of M. & F., as assignees of White; to which the defendants' counsel excepted.

The court was also requested to charge that although they should find that the assignment from White, in its terms, embraced all his property, yet the assignees were not liable to account for any sum of the property assigned them, so much as was shown to have come into their actual possession, or under their control. The court declined to charge on the issue in relation to the detention of the property, further than already charged, and the defendants' counsel excepted.

The counsel for White requested the court to charge the jury that the plaintiffs could not recover against him for any steel not shown to be in his possession or under his control at the time of the commencement of the action, and that there was no evidence to warrant the jury in finding that White had either the possession or the control of the property at the time the suit was commenced, or at any time after the assignment. The court declined so to charge, and the counsel for White excepted.

The jury found for the plaintiffs, and assessed the damages for detention of the property at $902.78.

A motion was made at Special Term to set aside the verdict, and the same was set aside, and a new trial granted on the grounds:

1st. That the court should have charged as requested by the counsel for the assignees.

2d. That there was no evidence of a joint possession of the assigned property, or that White had anything to do with it after the assignment, and the plaintiffs could not recover without such proof.

3d. No new evidence of a joint conversion by White and the assignees.

4th. The assignees were not liable until after a refusal to deliver the steel upon a demand made.

The plaintiffs appealed from this order stipulating that judgment final might pass against them, if the order was affirmed by this court.

*H. G. Wheaton*, for the appellant.

*J. K. Porter*, for the respondent.

MULLIN, J. The first alleged error presented by the record in this case is the admission of Stagg as a witness for the plaintiff, he being, as it is claimed, a person for whose immediate benefit the action is prosecuted, having signed the undertaking required by the Code to be given in proceedings for the claim and delivery of property.

Stagg could derive no benefit whatever from the suit, except by being released from his undertaking. He had an interest which under the former practice would have excluded him from being a witness, until another undertaking was substituted. Interest is no longer a ground for exclusion. Stagg had no power as surety in the undertaking, to control the suit, nor to appropriate to his own use any part of its proceeds. The action was not prosecuted for his benefit directly or remotely. If a person can neither control the action nor appropriate its proceeds, it is difficult to understand how it can be said to be prosecuted for his benefit. The defendants' counsel seems to think that Stagg was to be

treated as if he had indemnified some person for the taking of the property. By section 209, of the Code, the undertaking is for the prosecution of the action, the return of the property, upon the payment to the defendant of such sum as may be recovered against the plaintiff. The sureties are to be approved by the sheriff, and he is liable to the defendants for the sufficiency of the sureties, until the objection to them is waived, or they have justified, or new sureties be substituted and been justified. The action not being against the sheriff, indemnity to him could not convert the surety into a person for whose immediate benefit the suit was prosecuted. And indemnity to the defendants in the action, could not work out any greater change in the relations of the witness to the action. The case of *Howland* v. *Willett* (5 Seld., 170), has no application to the case. In that case the defendant was sued as sheriff, for unlawfully taking the plaintiff's property, and Edward Dwight was offered as a witness on the part of the defendant, and it appearing that he was a partner in the firm by which the judgment was recovered, on which the property in question was seized, and that the judgment had been assigned to said Dwight, and that he claimed the property and had indemnified the sheriff, it was held that he was a person for whose immediate benefit the action was prosecuted, and that he was, therefore, incompetent. There is no resemblance in the cases. The witness Stagg had not indemnified any person to the litigation, unless it was the defendant, and such indemnity does not affect the question of the competency of the indemnitor as a witness.

When the person offered as a witness is legally or equitably the owner of the property and entitled to its proceeds, or was entitled himself to the benefits of litigation by indemnity given to another, he is a person for whose benefit the action is prosecuted or defended. If he is a mere surety to enable another to prosecute or defend an action he is not a person for whose benefit the action is prosecuted or defended, and is not rendered incompetent as a witness under section 299 of the Code.

The counsel for the defendants Miller and Ferguson, on the close of the plaintiffs' case, moved to dismiss the complaint on the ground that the goods in question were sold upon the credit of Johnson, Cornwell & Co., and not of White, and that no demand was made on either of the assignees until after suit commenced. The motion was dismissed, and the defendants' counsel excepted.

The witness Stagg had testified, before the plaintiffs rested, that he was one of the plaintiffs' agents, and as such negotiated the sale to White; and that White offered to him as indorsers of his paper for the steel he might purchase the firm of Johnson, Cornwell & Co., and that he told White he would accept them as indorsers, and it was upon the condition that they should become such that the sale of the steel was made. It is a very grave mistake, therefore, to say that the sale was made on the credit of White alone, and not on that of Johnson, Cornwell & Co. also.

If the steel was held on a condition that was not complied with the title never passed from the plaintiffs, and White acquired no title thereto, nor could he convey any to the assignees. (*Acker* v. *Campbell*, 23 Wend., 372; *Sever* v. *Smith*, 1 Denio, 571; *Haggarty* v. *Palmer*, 6 Johns. Ch., 437; *Same* v. *Douw*, 1 Paige, 321; *Cory* v. *Hotailing*, 1 Hill, 311; *Smith* v. *Lynes*, 5 N. Y., 41; *Olmstead* v. *Hotailing*, 1 Hill, 317.)

In order to maintain an action against White, no demand was necessary. His act was tortious and he was liable in trespass for the unlawful taking. (*Farrington* v. *Payne*, 15 N. Y., 431.)

But as the assignees acquired possession of the property innocently, without notice of any defect of title in White, an action could not be maintained against them until after demand and refusal. (*Hall* v. *Robinson*, 2 Comst., 293.)

The assignees not being partners, a demand must be made upon each, in order to maintain a joint action. (*Mitchell* v. *Williams*, 4 Hill, 13.) It is not pretended that any demand was made of Ferguson, and hence the action as against him was not sustained. There was evidence sufficient to carry

the law to the jury on the question whether a demand was made of the property of Miller, and whether there was a refusal by him; and the jury must have found such demand and refusal, as without it there was no evidence of detention, by the assignees referred to by the judge in his charge to the jury.

I do not understand the respondents' counsel to contend that there was not a demand and refusal by Miller; but the objection is that it was after suit brought; the papers in the suit having been delivered to the sheriff at 11 A. M., and the demand not made till 1 P. M. of the same day.

A demand and refusal do not constitute a conversion of property. They are but evidence of a conversion, and the conversion of which they are the evidence is prior to the demand and refusal. (2 Phil. Ev., 226, Cowen and Hill's edition.) The learned authors say: "The refusal of the defendant may be evidence of a conversion at an antecedent period; as when deeds were in the possession of the defendant prior to Michaelmas Term, and the demand and refusal were proved to have been made on the day after that time, the court held it to be evidence of a conversion before the time." *Milton* v. *Endlestom* (5 Barn. and Ald., 87), was trover for certain deeds that were shown to have been in the defendants' hands before the Michaelmas Term. The bill was entitled generally of that term, the memorandum showed it was filed on the 28th November, but it was not in fact filed until the 24th December. The demand was made on the 29th November. The evidence of the actual time of filing was objected to as contradicting the record. But the court held it admissible; and they say a demand and refusal is evidence of a prior conversion; and as the deeds were in the defendants' hands prior to Michaelmas Term, there was evidence for the jury of a conversion before that period.

In *Morris* v. *Pugh*, (3 Bur., 1243), the same question arose as to whether the actual time of filing the bill could be shown in opposition to the recital in the record; and it was held that it might. And Lord MANSFIELD takes occasion to say: "Refusal upon demand is not an actual conversion, but

42

evidence of it. If the refusal on the 2d May had really been after the action brought I ought to have left it to the jury as evidence of a conversion before the bringing of the action."

In the case before us it is shown that the assignment was made and delivered on the 8th December. The action was commenced on or about the 17th December, and it was on the same day the demand was made. The demand and refusal was, under the cases cited, evidence to go to the jury of a conversion as early as the 8th December; that is to say, refusal to deliver to the true owner on demand, is evidence in the absence of all explanation that the party recovered it with intent to set the real owner's rights at defiance. The jury was justified in finding a conversion before suit brought. Miller is therefore liable to the plaintiffs for the value of the property.

It was held in Nichols v. Michael (23 N. Y., 264) that the fraudulent vendee of goods, and his assignee thereof for the benefit of creditors, are liable to a joint action by the vendor to recover the possession. White was therefore liable jointly with Miller and Ferguson for a conversion of the steel, and as to him no demand was necessary.

The court was requested to charge the jury, that there was no evidence to warrant them in finding that the whole of the steel claimed in this action ever came to the possession or under the control of the defendants, Miller & Ferguson. The court declined so to charge. All the steel sold by the plaintiffs to White was received by him and taken to his shop. There is no proof that he sold a pound of it, or that by the course of business in his shop a sale of any part of it might be inferred. As between the plaintiffs and White there could be no doubt but that at the time of the assignment he had in his possession all the steel bought of the plaintiffs. And it seems to me the inference is equally strong against the assignees. By the assignment they took all personal property, tools, machinery, etc., in the ax factory, and all iron, steel, stock and materials for being manufactured, and all axes and other edged tools manufactured or in process of

being manufactured, and stock partly manufactured, and all manufactured articles in the hands of commission merchants, or other dealers, etc., etc. If none had been sold by White, then all the steel was on hand in bars, manufactured, in process of manufacture, or in the hands of dealers. The plaintiffs gave all the evidence as to the possession of the property by the assignees, the nature of the case admitted of, and it was in the power of the defendants to prove beyond all doubt how much of it passed to them under the assignment. And failing to give any proof, I think the jury were justified in presuming that all the property purchased of the plaintiffs passed to the assignees. I am of opinion, therefore, that the branch of the charge under consideration was right.

The only remaining question is whether the question put to White, as to whether, when he purchased the steel, he intended to pay for it, was properly excluded. I think it was, for two reasons, viz.: 1. The inquiry is only competent when the intention of the witness at the time, and in relation to the subject-matter of the inquiry, is material. *Seymour* v. *Wilson* (14 N. Y., 56); *Griffin* v. *Marquart* (21 id., 121); *Forbes* v. *Miller* (25 id., 433.) There was no fraud imputed to White in making the sale, nor was there any issue in the pleadings as to a fraudulent intent, and hence a case was not made that rendered it either proper or necessary to inquire into White's intentions when he made the purchase. 2. White denied ever having made any contract with the plaintiffs' agents for the purchase of the steel. He says he talked with them about purchasing more than one box, but no agreement was made in relation to them, and he did not know that the plaintiffs' agents contemplated sending forward more than the single box until he was informed by his teamster that ten boxes were at Troy. Then, for the first time, did he assent to take the additional boxes. Whether he had an intention not to pay for property forced upon him, as he insists, by the plaintiffs' agents, could not be material, and the inquiry was properly excluded.

The result of my examination of this case is that the order as to Miller and White must be reversed, and that as to the

defendant Ferguson it should be affirmed, and judgment absolute under the stipulation in favor of Ferguson against the plaintiffs.

Judgment accordingly.