22552. PAULK *v.* UNION BANKING COMPANY.

DECIDED MAY 10, 1933.

*Moore, O'Berry & Wheeless, R. D. Smith,* for plaintiff.
*Kelley & Dickerson,* for defendant.

BROYLES, C. J. M. L. Paulk brought suit against the Union Banking Company, alleging that on December 11, 1930, he deposited in the defendant's bank a draft for $1010.62, drawn on the Mountain City Mills Company of Chattanooga, Tenn., for collection; that on December 19 the Union Banking Company closed its doors and was taken over by the State superintendent of banks; that on December 19 the draft was paid and remitted to the Union Banking Company; that after the bank had closed its doors it credited the amount of the draft to petitioner's account without his knowledge or consent; that petitioner filed his claim with the superintendent of banks against the Union Banking Company for $1010.62, as a preferred claim, and the claim was rejected and was classified as an ordinary depositor's claim; that the proceeds of the draft were in the defendant bank when the liquidating agent took charge; that the deposit of such draft created between petitioner and the defendant bank the relation of principal and agent, in that the bank took the draft for collection; that the defendant bank was insolvent on the day it received the draft for collection and on the day the draft was credited to petitioner's account, which facts were known to the officers and employees of the bank and unknown to the plaintiff. Petitioner prayed that his claim be allowed as a preferred claim against the assets of the bank as against the general deposi-

tors, and that the superintendent of banks be allowed to pay the full amount thereof.

The trial judge directed a verdict in favor of the defendant, and on this verdict entered judgment. On the direction of the verdict and the judgment thereon the plaintiff assigns error.

The evidence discloses that the plaintiff deposited the draft on December 11, and defendant, Union Banking Company, sent the draft to its correspondent in Atlanta, the Fulton National Bank, which forwarded it to the Hamilton National Bank of Chattanooga, Tennessee, and the last-named bank presented it for payment; that the Fulton Bank received the draft on December 12, and credited it to the account of Union Banking Company on December 12, with the right of the Union Banking Company to check against it; that if the draft had not been paid when presented, the Fulton Bank would have charged it back to the Union Banking Company; that the draft was paid, and the Fulton Bank charged it to the Hamilton Bank of Chattanooga on December 19; that the Union Banking Company was placed in the hands of the superintendent of banks on December 20, and did not open for business on that date.

The evidence fails to sustain petitioner's allegation that "after the bank had closed its doors, the officers and agents of the Union Banking Company credited the amount of the draft" to petitioner's account. On the contrary, the cashier of the bank testified, and the undisputed evidence shows, that petitioner's "account was credited with the [amount of the draft] before the bank closed." The evidence also failed to sustain the allegation that the defendant bank was insolvent at the time of receiving the draft and at the time of crediting the amount thereof to plaintiff's account, and that the officers and agents of the bank knew this. There was no evidence to show the assets and liabilities of the bank; and it is a recognized fact that certain conditions and emergencies might arise whereby a solvent bank might not be able immediately to meet demands that might be made upon it, and, therefore, be forced to close its doors though it be solvent. Nor was it shown that the officers knew the bank was insolvent. The officers of the bank apparently believed that its assets and liabilities authorized a loan, as they were attempting to make a temporary loan, just prior to the closing of the bank, to meet the demands that might be made upon it. The evidence shows that the bank "had always been able to get money up

to that time," and there was no evidence of any debt of the bank which lessened its financial status since these previous loans had been made.

Under the evidence in the case there is no merit in the contention of the plaintiff in error that inasmuch as the defendant bank had the draft for collection, it was the agent of the plaintiff, and when it was insolvent could not credit the amount of the collection to the drawer's account and change the status of the parties. The evidence shows that the plaintiff "had an account with the Union Banking Company for a number of years;" that the deposit slip on which plaintiff entered the draft in question provided that "In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. . . It may charge back any item at any time before final payment;" that plaintiff had a copy of this deposit slip; that he "made two other deposits in the bank after December 11;" and that "the checks which he drew on the bank between December 11th and December 19th were charged against the balances that he had on December 11th plus the deposit which he made before the 19th." It is true that a deposit of money obtained by fraud when a bank is known to be insolvent creates a trust in favor of the depositor and entitles him to priority over general creditors of the bank. However, in the instant case there is nothing to show that the officers of the bank did any act or made any representation to obtain this deposit; and the evidence shows that the deposit of the draft for collection was made nine days before the bank closed. The plaintiff was a regular customer of the bank, and gave no instructions as to the disposition of the proceeds of the draft; and "in the absence of any general agreement, the custom of banks to credit customers with the proceeds of paper left for collection when the paper has been collected is universally recognized; and customers and banks are presumed to contract in view of this usage. The law, therefore, authorizes the bank to credit the customer with the proceeds in lieu of making a specific delivery; and the necessary effect of an authorized credit is to create the relation of debtor and creditor between them from the time when the credit is given." 3 R. C. L. 634, § 262. This principle is recognized in *Macon Grocery Co.* v. *Citizens Bank of Fort Valley*, 42 *Ga. App.* 74

(3) (155 S. E. 57), where it was held that a provision in a deposit slip, similar to that in the instant case, creates "a contract by which the bank in accepting the checks [or drafts] does so as the agent of the depositor to collect the proceeds of the checks [or drafts], and afterwards *to deposit them to the depositor's credit in the bank.*" (Italics ours.) The facts of the instant case do not bring it within section 34 of the banking law of 1919 (Ga. L. 1919, p. 206; Michie's Code (1926), § 2366 (180), as the lien referred to in that section is based upon "a request that remittance be made" for the collection; which was not done in the instant case. As stated in *McGregor* v. *Battle,* 128 *Ga.* 577, 583 (58 S. E. 28, 13 L. R. A. (N. S.) 185) : "Where one deals with a bank upon the assumption that it is solvent, and intrusts his money to it as a general depositor, he has no superior claim over other creditors growing out of the fact that he was ignorant of the insolvency at the time of the deposit; there being no fact amounting to an inducement to make the deposit other than the bank's holding itself out to the world as a bank of deposit. We do not think that the mere silence of the officers of a bank as to its condition at the time of the deposit is sufficient either to authorize a depositor to reclaim his money on account of a fraud, or to give him any superior lien over other creditors in the distribution of the assets of the bank."

Under the foregoing rulings and the evidence in the instant case, the court did not err in directing a verdict for the defendant and entering judgment thereon.

*Judgment affirmed.  MacIntyre, J., concurs.*

GUERRY, J., dissenting.  M. L. Paulk, on December 11, 1930, deposited with the Union Banking Company of Douglas a draft for $1010, drawn on the Mountain City Mills, of Chattanooga, Tenn., with an "order-notify" bill of lading attached, for a carload of corn. It was admitted that this draft was so deposited with the Union Banking Company for collection, and that the relation of principal and agent was thereby created between Paulk and the bank.  It also appears that Paulk had at the time a checking account in said bank and that he subsequently thereto made other deposits on such checking account.  The draft for $1010 was not credited to his checking account, and there was no relation of debtor and creditor established between Paulk and the Union Banking Company as to the draft. The Union Banking Company in due course forwarded this draft,

together with other items, to the Fulton National Bank of Atlanta. This bank credited the Union Banking Company with all the cash items, including the draft for $1010, and undertook to collect the same by sending it to the Hamilton National Bank, in Chattanooga, Tenn. The Fulton National Bank received notice on December 19 from the Hamilton National Bank that the draft had been paid and then charged the item to the Hamilton National Bank. It was further shown that the transaction did not become a finally adjusted and final credit as between the Union Banking Company of Douglas, the Fulton National Bank of Atlanta, and the Hamilton National Bank of Chattanooga until such notice was received. It appears further that on December 19 the Union Banking Company of Douglas gave to Paulk credit for this item. It does not appear at what time the credit was given or how any notice was received from the Fulton National Bank of Atlanta that such items had been paid. It appears that Douglas is 230 miles from Atlanta. The Union Banking Company closed on December 19 and did not open after that time. When a deposit is made in a bank the relation of debtor and creditor is established as between the bank and the depositor. Under the decision in the case of *Macon Grocery Co.* v. *Citizens Bank of Fort Valley,* 42 *Ga. App.* 74 (supra), when a depositor deposits checks upon other banks in his own bank, nothing else appearing, the title to the checks passes to the bank in which they are deposited and the relation of debtor and creditor arises between the bank and the depositor. If the checks are accepted by the bank for the purpose of collection and deposit afterwards to the depositor's credit in the bank, the relation of principal and agent exists until such bank has actually made such collection; and until such collection has been made by the bank and the proceeds therefrom deposited to the credit of the principal, the relation of principal and agent continues to exist. After the collection is made and the amount so collected is deposited, the relation of debtor and creditor exists. In the instant case the relation of principal and agent established December 11 between Paulk and the Union Banking Company continued until the Union Banking Company received notice that such collection had been made. This relationship, once established, may not be changed without the notice and consent of both parties, unless collection has been made and the bank has been notified thereof. The evidence in this case shows that Paulk was

given credit on the books of the bank, in Douglas, on December 19. The evidence shows also that the Fulton National Bank in Atlanta did not receive notice of the collection of this claim, and it did not become finally adjusted, in so far as they were concerned, until December 19. There is no evidence as to how any notice was communicated by the Fulton National Bank to the Union Banking Company of Douglas, nor whether any such notice was ever actually given. The Union Banking Company of Douglas, without such notice and without the knowledge and consent of Paulk, would have no right to change the relationship of principal and agent to that of debtor and creditor. The evidence in this case and the circumstances thereby shown were insufficient to warrant the direction of a verdict by the trial judge. Such issue should have been submitted to the jury.

I think therefore the judgment should be reversed.