35434.   WOOD *v*. FRANK GRAHAM COMPANY.

Decided March 14, 1955.

622

T. J. Long, Ben Weinberg, Jr., for plaintiff in error.
Martin H. Peabody, contra.

NICHOLS, J.   In this case the plaintiff brought an action of trover against the defendant for certain items of automobile trim, alleging possession in the defendant, title in the plaintiff, and a refusal by the defendant to deliver the property to him.   The evidence shows that the plaintiff delivered to the defendant a certain described automobile for repairs, including the replacing of certain "trim," such as upholstery on the seats, door panels, etc.; that the defendant sublet to American Tire Company of Atlanta the job of replacing the trim in the automobile sent to it; that, after removing the old trim, the automobile was returned to the original bailee, Frank Graham Company, and thereafter from some unknown cause the trim, while in the possession of American Tire Company, was destroyed by fire.   In trover the gist of the action is conversion, which is "an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation."   Southern Express Co. v. Sinclair, 130 Ga. 372, 373 (60 S. E. 849); Lucas v. Durrence, 25 Ga. App. 264 (1) (103 S. E. 36).   In trover "there must be some act of malfeasance, not mere nonfeasance, some positive wrong and not the mere omission of what is right.   Mere neglect of duty will not support an action of trover."   Shore v. Brown, 19 Ga. App. 476 (5) (91 S. E. 909), and cit.   As was said in the Southern Express Co. case, supra: "A plaintiff can not sue for a conversion

and recover by proving that there was no conversion, but at most negligence in failing to promptly deliver, and a destruction by fire while the property was stored in a warehouse." By this trover action here the plaintiff does not seek damages for the failure of the defendant to use ordinary care with respect to the bailed property, that is, that the defendant is guilty of nonfeasance; but seeks to recover for a tortious conversion, a malfeasance. Hence, we are concerned only with the question whether or not a conversion is shown by the evidence.

The defendant sought to exculpate itself from liability as for a conversion (hereinbefore defined), by showing a general custom among the merchants selling and repairing automobiles in subletting certain specialized, including trim, work to others equipped to do such work. Therefore, it becomes necessary to inquire into the law touching such alleged custom. In *Branch Sons & Co.* v. *Palmer*, 65 *Ga.* 210, 214, it was said: "So that it will be seen that the custom of a trade is admissible, not as ordinary parol evidence, but as law—entering into the contract just as any other law does. It is not dependent on the rule that parol evidence is inadmissible to vary a writing, nor inconsistent therewith, but upon the ground that the law makes the custom part of the contract, and when the custom is so universal as to become the law of the trade, it becomes by implication a part of the contract, and the contract is to be construed thereby just the same as if it had been inserted therein. Of course, custom can only be proved by word of mouth from the men engaged in the business, and evidence thereof is necessarily in parol, but it stands on quite a different footing from parol evidence of one standing by when a written contract is made, and who undertakes by his uncertain memory to add to or vary the thing set down in black and white at the time the contract was made." As pointed out by the court just preceding the above quotation, it is unnecessary to revert to the common law, as our Code itself embodies the substance of the common law as to custom. In *Regents of University System* v. *Blanton*, 49 *Ga. App.* 602 (1c) (176 S. E. 673), it was held: "Valid usages concerning the subject-matter of a contract, with knowledge of which the parties are chargeable are by implication incorporated therein, unless expressly or impliedly excluded by its terms; and are admissible to aid in its interpre-

tation, not as tending in any respect or manner to contradict, add to, take from, or vary the contract, but upon the theory that the usage or custom forms a part of the contract." In *Williamson, Inman & Co.* v. *Thompson,* 53 *Ga. App.* 821, 827 (187 S. E. 194), this court, speaking through Judge Jenkins, said: " 'The custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract.' Code § 20-704 (3). 'The surrounding circumstances are always proper subjects of proof to aid in the construction of contracts.' § 38-505. 'In like manner evidence of known and established usage shall be admissible for the same purpose as well as to annex incidents.' Code § 38-506. . . Among other matters which § 38-112 provides are 'matters of public knowledge,' which 'shall be judicially recognized without the introduction of proof,' are 'general customs of merchants.' However, to be thus judicially recognized, the custom must be one about which there is and can be no dispute and which is known of all men. See *Paulk* v. *Union Banking Co.,* 46 *Ga.* App. 815, 817 (169 S. E. 313). 'It is unnecessary to plead general customs or usages of which the court will take judicial notice; but to invoke a custom or usage relating to a particular trade or locality, distinct pleading is necessary.' [Citing.] 'The burden of proving a custom or usage not judicially noticed is upon the party asserting it.' 17 C. J. 519, and cit. Where the existence and universality of a custom are not so generally known and recognized as to be the subject of judicial notice, so unequivocal and uncontradicted that the court may hold as a matter of law that such a custom existed and entered into the contract, such questions are for the jury. [Citing]." In *Mott* v. *Hall &c. Co.,* 41 *Ga.* 117, a leading case, it was said: "The custom of a business or trade is binding when it is of such universal practice that it becomes by implication a part of the contract. If, as the witness stated, it had been the universal practice for thirty years, for clerks to make notes for necessary expenses, and to make contracts by direction or authority of the captain for building or repair account, we think the owners of this boat are presumed to have had knowledge of that custom, and to have given the clerk of their boat, by implication, authority to make such contracts as were universally made by other clerks

of other boats running on the same river." In that case the owners of a boat plying the Chattahoochee River in Georgia sought to avoid liability on a note signed by a clerk on the boat for necessary expenses, and where no express authority had been delegated to him by the owners of the boat. In *Citizens & Southern Bank* v. *Union Warehouse Co.*, 157 *Ga.* 434, 446 (122 S. E. 327), it was said: "The usages of a particular business, which are known, uniform, reasonable, and not contrary to law or public policy, may be presumed to have entered into and formed a part of the contracts and undertakings of persons engaged in such business and those who deal with them." Thus it will be seen that the rule as to the binding effect of an established custom is of long standing, and as late as *Shippen* v. *Folsom*, 200 *Ga.* 58, 69 (35 S. E. 2d 915), it was held by the Supreme Court of this State that, unless a contract excludes by its terms the operation of a proved universal local custom, evidence of such custom is admissible to interpret the full intent of the contract. That case illustrates, too, that the custom is not one to be invoked only on behalf of a plaintiff seeking relief from a defendant, but also by the defendant against a demand of the plaintiff. This binding effect of custom is so much implied in the contract which does not exclude it that it was held in *Ocean Steamship Co.* v. *McAlpin*, 69 *Ga.* 437 (3a): "To render a custom thus binding, it is not necessary to show that it 'was in the minds of both parties,' before it becomes a part of the contract." It may be observed that this old case has never been criticized. The custom of the trade may be shown notwithstanding there be a provision in the contract that all "conditions and agreements between the parties thereto, 'either oral or written,' are contained in the contract." *Weems* v. *Des Portes*, 47 *Ga. App.* 546 (1) (171 S. E. 182). Of course, custom may not be invoked when it contravenes declared law. *Fidelity & Deposit Co.* v. *Butler*, 130 *Ga.* 225, 243 (3) (60 S. E. 851, 16 L. R. A. (NS) 994); *Ponder & Co.* v. *Mutual Benefit Life Ins. Co.*, 165 *Ga.* 366 (5) (140 S. E. 761). Neither does it have application to nonresidents, as they could not reasonably be charged with knowledge of a custom prevailing in this State. *McCall* v. *Herring*, 118 *Ga.* 522 (1) (45 S. E. 442); *Lander Motors* v. *Lee Tire &c. Co.*, 89 *Ga. App.* 194 (2) (78 S. E. 2d 839). The question whether or not a custom has been shown and is.

applicable under the facts of the case is ordinarily for the jury. *Branch* v. *Palmer*, supra. It may be added that it is not necessary to show that the custom is followed by every merchant in the vicinity where the custom exists. *Taber Mill* v. *Southern Brighton Mills*, 49 *Ga. App.* 390, 393 (175 S. E. 665).

The above cases hold without dispute that in this State the introduction of evidence as to a general custom in a trade or business is permissible to show the full extent and purport of an agreement where such custom is not subject to the exceptions mentioned. Having set forth in considerable detail the provisions of law as to custom, because of the novelty of the case here presented, an examination of the evidence will now be made.

As hereinbefore stated, the gist of an action of trover is malfeasance and not mere misfeasance. To negative conversion the defendant showed a universal custom among the automobile merchants of the City of Atlanta, of which the plaintiff was a resident, of subletting certain repair work to specialists. The defendant did not plead this custom; but even if it was one which could not be judicially recognized, it was shown without objection by the plaintiff, and hence it has probative value if applicable to the agreement. Furthermore, a proper construction of the plaintiff's testimony might easily be found by a jury, or a judge trying the case without a jury, to show that the plaintiff was fully aware of the custom, especially among the larger automobile merchants, of subletting some repair work. When asked as to the general custom in Atlanta, he answered that he was aware of the practice of subletting repair work on radiators and seat covers, but added that *"smaller* places do all types of miscellaneous work." (Italics ours.) Then came questions clear and pointed with respect to subletting "trim." "Q. But a big dealer like Frank Graham Company, they send outside work like radio repairs, and you know that they send *trim* out some time, isn't that right? A. Yes. Q. You are well familiar with the practice that automobile repairs are sublet for expert work like doctors and lawyers do, aren't you, Mr. Wood? A. Yes." (Italics ours.) It is true that the plaintiff testified that he did not have any idea that any of the work on his automobile would be sublet, and that nothing was said about it, but he nevertheless committed himself to the probability that, under the stated custom

of the trade, it might be sublet, and he did not contract against it. Thereafter, upon being recalled to the stand after a recess, as is inferable from the record, he testified that he did not say that he knew that automobile dealers would send out trim, that he thought that was done by the company itself, especially a company as big as Frank Graham Company (though his original testimony was that *smaller*, rather than larger, companies do all types of miscellaneous work); and he did not believe that he said that he knew about trim, but he added that he was not, to his knowledge, changing his testimony. There can be no reasonable doubt that, on the original examination, the plaintiff said that he was familiar with the practice, especially among the larger dealers of subletting trim work, and his testimony as a whole is equivocal and contradictory. In such circumstances the jury, or the judge trying the case without a jury, must construe his testimony most strongly against him, under repeated decisions of the appellate courts. So construed, his testimony must be taken as showing that he did know the general practice of automobile merchants, especially the larger ones, in subletting trim work. The judge was authorized to find from the testimony of several witnesses in the automobile and repair business that the custom in fact existed in the City of Atlanta; and that this custom was actually known to the plaintiff, whether or not he *thought* the trim work would be installed by Frank Graham Company itself. The judge was also authorized to find from the uncontradicted evidence that Amercian Tire Company, to which the trim work was sublet, was thoroughly competent to do the work. We recognize the principle that, where there is a conversion, the bailee is liable for all damages thereafter ensuing, even for loss which due care could not have prevented. *Mayor &c. of Columbus* v. *Howard,* 6 *Ga.* 213 (5); *Raines* v. *Rice,* 65 *Ga. App.* 68, 74 (15 S. E. 2d 246). However, a bailee for repairs does not wrongfully assume control over the property of the bailor or interfere with his right of possession, so as to constitute a conversion, in following a recognized custom and placing the property with another, unless the bailment expressly or by implication requires the personal services of the bailee. Rourke *v.* Cadillac Automobile Co., 268 Mass. 7 (167 N. E. 231); Travelers Fire Ins. Co. *v.* Brock, 30 Cal. App. 2d 112 (85 Pac. 2d 905).

There was no specification for personal services here, and consequently there was no wrongful usurpation of authority over the property of the bailor, that is to say, there was no conversion. The trial judge did not err in finding accordingly and in rendering judgment for the defendant.

While we find no case exactly in point in this State, Aetna Casualty &c. Co. *v.* Higbee Co., 80 Ohio App. 437 (76 N. E. 2d 404, 174 A. L. R. 1429), involving the subletting of a fur coat for repairs, is quite similar on its facts to the present case and in accord with our rulings.

*Judgment affirmed. Felton, C. J., and Quillian, J., concur.*