36958. WILLIS *v.* MIDLAND FINANCE COMPANY.

DECIDED MARCH 13, 1958—REHEARING DENIED APRIL 4, 1958.

444

*Joan Larsen,* for plaintiff in error.

*Powell, Goldstein, Frazer & Murphy, James K. Rankin, Alford Wall,* contra.

NICHOLS, Judge: 1. The one special ground of the amended motion for new trial complains that the trial court erred in failing to admit certain evidence. It is unnecessary to pass on this ground of the amended motion for new trial inasmuch as it appears that the defendant, Julia Mae Willis, testified to the same facts and no objection was made. See in this connection, *Ray* v. *Hutchinson,* 27 *Ga. App.* 448, 449 (108 S. E. 815), and *Jones* v. *State,* 27 *Ga. App.* 574 (4) (109 S. E. 515). If the exclusion of the evidence was error it was harmless error where uncontradicted evidence to the same effect was admitted without objection.

2. The defendant, Julia Mae Willis, relies on the line of cases exemplified by *Robbins* v. *Welfare Finance Corp.,* 95 *Ga. App.* 90 (96 S. E. 2d 892), which hold that, where a party has lawfully acquired possession of property, before trover will lie, there must have been a demand for the property by the plaintiff and a refusal to deliver such property by the defendant.

The evidence in the present case shows that a demand was made on the defendant Julia Mae Willis for the property and that later the present action was instituted. The defendant contends that this evidence was insufficient to show a conversion inasmuch as the evidence did not show a refusal on her part to deliver the personalty.

While it is true that the demand and refusal are prerequisites to a trover action where the defendant has obtained

possession of the property lawfully, where a demand is shown and period of time elapses, in the present case a few days, and the trover action is then begun, it is a question for the trior of facts to determine if the demand was refused. The evidence here presented authorized a finding that the demand was made and that the defendant, Julia Mae Willis, refused to deliver the personalty.

In *Hodges* v. *Cummings*, 115 *Ga.* 1000 (42 S. E. 394), the Supreme Court held that, where a person comes into possession of personalty lawfully, proof of a demand by the plaintiff, the owner, and a refusal to deliver by the defendant, constitutes a conversion.

The defendant, Julia Mae Willis with her husband, gave the plaintiff a bill of sale to secure debt on certain items of personalty, therefore it cannot be seriously contended that the defendant, Julia Mae Willis, did not, prior to the institution of the trover action, have possession of such personalty.

Although the defendant pleaded and presented evidence that the property, the automobile, was in the "custody of the law" at the time of the demand, this alone was not a defense to the trover action.

In support of this contention the defendant cites cases where trover was instituted against an officer who held the property under authority of law. In those cases the "right of possession" was shown to be in such officer, and of course the trover could not lie against him so long as he had the "right of possession." Also cited is *Peoples Bank* v. *Pierce*, 143 *Ga.* 563 (85 S. E. 860), where the plaintiff foreclosed a mortgage and had the property levied on and, while the sheriff held the property, instituted a trover action against the defendant for the same property. In that case trover would not lie against the defendant.

In the present case the automobile was impounded when it was abandoned by the driver after it had been involved in a collision, and while the "right of possession" may have been in the authorities who had impounded it, this evidence would not negative the conversion by the defendant Julia Mae Willis.

3. The contention that the alternative verdict or judgment is contrary to law is without merit, and the trial court did not err in denying the defendant's motion for new trial as amended.

446

*Judgment affirmed. Carlisle and Quillian, JJ., concur. Townsend, J., concurs specially. Felton, C. J., and Gardner, P. J., dissent.*

TOWNSEND, Judge, concurring specially. 1. The pleadings and evidence in this case affirmatively show that the defendant Julia Willis and her husband received a loan from the plaintiff Midland Finance Company for the purpose of purchasing an automobile, and that they jointly signed a bill of sale to secure debt securing the loan which listed the property included in the bill of sale as being the automobile purchased and a lot of described household furniture. While the defendant Julia Willis contended that her husband was the sole purchaser of the automobile, and that she acted as surety only, the evidence authorized a finding that the defendants were co-owners of the automobile, and that the defendant Julia Willis was the sole owner of the furniture, which she had owned prior to the execution of the bill of sale to secure debt.

As to the automobile, it follows that the defendants were tenants in common and each had a right to the possession and use of the automobile jointly with the other. The evidence demands a finding that on February 2, 1957, the automobile was involved in an accident and abandoned, and thereafter seized and held by police officers. The only evidence as to the use of the car is that of Julia Willis, who swore that she could not drive, was not in the car at the time, knew nothing about its whereabouts and was unable to give the plaintiff any information about what had happened to it; that her husband had taken it off and told her he lent it to a cousin. The jury was authorized to find that a demand for both the furniture and automobile was made "a few days" before March 15, when the action was instituted, and that on March 15, Julia Willis was personally served with bail process; that at the same time the marshal serving the process levied on and seized the furniture and, not finding the automobile, imprisoned the defendant; that she later executed a replevy bond and was released, and that the automobile also was subsequently turned over to the custody of the marshal.

There is no question before us in this case as to whether the imprisonment of the defendant under bail process was legal. At that time she surrendered all of the property to the marshal

which, under the evidence before us, she had in her possession and control. Being a tenant in common as to the automobile she had no right of possession of it hostile to that of her husband, and if in fact she had no knowledge and no means of acquiring knowledge of its whereabouts so as to exercise her own right of possession over it, she could be guilty of no conversion in failing to deliver it to the plaintiff by reason of her having allowed her husband to take it away, he having as much right to its use as she.

As to the furniture, however, the case is different. If the defendant converted it to her own use as against the right of the plaintiff, there is evidence to support a verdict against her in the trover action. The evidence is that a few days before the action was filed the plaintiff demanded the furniture as well as the automobile. The fact that it was not turned over to the plaintiff, plus the fact that thereafter the defendant resisted the plaintiff's claim, claimed title thereto adversely to the plaintiff, and filed a replevy bond, authorizes the presumption that the demand was refused, and an inference that the defendant converted this property to her own use prior to the institution of the action. *Smith* v. *Commercial Credit Co.*, 28 *Ga. App.* 403 (111 S. E. 821). The brief of counsel for the plaintiff in error states, "We readily concede that the posting of bond for the property or its condemnation money gives rise to the presumption that the defendant was in possession of same. This presumption unless refuted would have rendered further proof of conversion unnecessary." The sole question, therefore, is whether the burden was on the plaintiff to show the manner in which the demand which it made was refused, or whether it was on the defendant. It appears to me that the plaintiff made out a prima facie case for conversion of all of the property prior to the institution of the action by showing title and possession in the defendants jointly, a demand, and a failure to deliver, but that the defendant then carried the burden of proving that as to herself, there had been no conversion of the automobile. I do not think, however, that she offered any evidence which would demand a finding that as to herself there had been no conversion of the furniture. Code § 107-101 provides: "In actions to recover the possession of chattels, it shall not be necessary to prove any conversion of the property where the defendant is in possession when the action

is brought." In *Robbins* v. *Welfare Finance Corp.*, 95 *Ga. App.* 90 (96 S. E. 2d 892) we held that where the defendant is lawfully in possession of chattels pledged under a bill of sale to secure debt, it is necessary to show a demand and refusal. The reason for this holding, as there shown, is that mere failure to pay a debt is not of itself sufficient to constitute conversion, certainly not until the defendant is placed no notice that' the plaintiff desires to rescind the contract. This decision is shown by a demand. There was a demand ·in this case. It was followed by a failure (for what reason, it is not shown) to offer the furniture back, and further followed by the posting of replevy bond and the filing of an answer denying that the plaintiff had any right or title to the defendant's furniture. There was, accordingly, sufficient evidence of conversion to authorize a finding in favor of the plaintiff on this issue.

2. Code § 107-105 provides: "The plaintiff in an action to recover personal property may elect whether to accept an alternative verdict for the property or its value, or whether to demand a verdict for the damages alone, or for the property alone and its hire, if any; and it shall be the duty of the court to instruct the jury to render the verdict as the plaintiff may thus elect." Code § 107-106 provides: "An alternative verdict in an action of trover so far vests the title to the property sued for in the plaintiff, that, until the judgment is paid by the defendant, such judgment shall have the first lien on the property sued for, to the exclusion of all other claims whatsoever." Code § 110-514 provides: "When a verdict for damages shall be rendered in favor of a plaintiff in trover, and a judgment entered thereon, the said verdict and judgment shall not have the effect of changing the property which is the subject-matter of the suit, or vesting the same in the defendant in said suit, until after the damages and costs recovered by the plaintiff in such action are paid off and discharged, except so far as to subject such property to sale under and by virtue of an execution issuing upon such judgment in such action of trover, and to make the same liable to the payment of the damages and costs recovered in said action, in preference to any other judgment, order, or decree against the defendant in said action of trover." In *Mitchell* v. *Printup*, 19 *Ga.* 579 (1) it was held: "Where the verdict and judgment in

trover is in the alternative, the defendant must elect either to deliver the property within the time prescribed. . . It is unquestionably a relaxation of the law and a privilege to defendants to permit them to deliver up the property in discharge of the damages recovered against them." The effect of such verdict and judgment, as set out in *Southern Express Co.* v. *Lynch,* 65 *Ga.* 240 (1) is that if the defendant does not elect to surrender the property within the period stated in the judgment, the judgment becomes absolute for money. An execution based on such a judgment is general against all of the defendant's property and special against the property which is the subject matter of the action, and subjects that particular property to levy and sale for the purpose of realizing a sufficient amount to pay off the judgment. *Frick & Co.* v. *Davis,* 80 *Ga.* 482 (5 S. E. 498).

Counsel for the plaintiff in error contends that, since the plaintiff can recover no amount greater than the debt plus interest, the plaintiff would not be entitled to a judgment for the property itself because this is greater than the amount of the debt. But the defendant here has not been harmed, even if this contention is correct, for the reason that the defendant has a right to choose whether to surrender the property, or to force the plaintiff to sell it and satisfy his debt out of the proceeds if he can. Apparently the defendant also exercised this right of election, since the 10 days allowed to elect to surrender the property expired before this writ of error was sued out. She is in no danger that the plaintiff will seize property having a greater value than the debt for the reason that hers was the final decision as to whether the plaintiff should have a property judgment or a money judgment with a special lien on the property for its satisfaction. The form of the judgment, based on the plaintiff's election of an alternative verdict, was entirely proper.

FELTON, Chief Judge, dissenting. The only evidence to show that a demand was made on the defendant was as follows: "Q. And did you demand that she turn over the furniture and the automobile to you? A. Yes, sir. I told her that, if I couldn't get— Q. Just tell the judge in your own words just how you went about it and what happened. A. We told her we were going to have to have something on the account in order to carry it, and she told us that she wasn't in position to pay, she

had other bills to pay, and I would have to have Clate pay it. And I told her then I would have to have that furniture and the automobile, because I couldn't carry it further for reasons of nonpayment." I do not think that such a demand is a sufficient demand within the requirements of the law. However, assuming for the sake of argument that such did constitute a valid demand, I do not think that there was a refusal to redeliver the property by the defendant sufficient to show a conversion. The defendant's uncontradicted evidence was that she was never in possession of the automobile, that she had never driven the automobile, could not drive an automobile, did not possess a driver's license and had not ridden as a passenger in the automobile over six times. She further testified that at the time when the alleged demand was made on her she did not know where the automobile was. The evidence further shows that the alleged demand was made on her around March 12 or 13, 1957; that on February 2, 1957, the Atlanta Police Department had impounded the automobile and that it was placed in custodia legis because the automobile had been involved in a collision and had been abandoned by the driver. There is no evidence that the defendant ever made the statement that she would not deliver the property to the plaintiff or ever made any statement disputing the plaintiff's right of possession. The only conclusion that can be drawn from the evidence is that after the alleged demand was made on her the defendant just did nothing. Under the evidence I do not think that there was any refusal on the part of the defendant to deliver the automobile after the alleged demand or that she was in a position to deliver the automobile in response to the alleged demand, and that her lack of possession was due to any conversion on her part. See in this connection, 61 A. L. R. 628, IV; 129 A. L. R. 646, IV; 53 Am. Jur. 844, Trover and Conversion, § 47. "A demand and refusal is not conversion; it is only evidence of conversion, and to make it such, *it must appear that the defendant had it in his power to deliver.*" (Emphasis supplied.) *Seago* v. *Pomeroy, 46 Ga.* 227, 230. It was further held in that case (headnote 1) "It is error in the court to charge the jury in a trover case, that a demand and refusal is proof of conversion, it not appearing that the property sued for was in the possession, power, or control of the

defendant, at the time of the demand and refusal." "In trover the gist of the action is conversion, which is 'an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation.'" *Wood* v. *Frank Graham Co.,* 91 *Ga. App.* 621, 622 (86 S. E. 2d 691). There are various means whereby conversion may be shown, and demand and refusal is just one of these means. Actually the refusal of a demand must be such a refusal as would amount to an unauthorized assumption and exercise of the right of ownership in hostility to the plaintiff's rights or an act of dominion inconsistent with his rights or an otherwise unauthorized appropriation. I think under the evidence in this case that no such refusal was shown.

In her answer, the defendant disclaimed all title and interest in and right of possession to the automobile. The defendant on the stand also made such disclaimer. Under the evidence in this case and in view of such disclaimer, the burden of proof was on the plaintiff to show a valid demand and a valid refusal to redeliver. *Wood* v. *Sanders,* 87 *Ga. App.* 84, 86 (73 S. E. 2d 55). This, I think, the plaintiff failed to do.

Since the legal title of the automobile was jointly in the defendant and her husband as against each other, they each had equal right to possession of the automobile. The evidence fails to disclose that a demand was ever made on the defendant's husband who from the evidence in fact had exclusive possession of the automobile as against the defendant. Under the allegations of the petition the defendant and her husband were joint tortfeasors. See *Council* v. *Nunn,* 41 *Ga. App.* 407, 411 (153 S. E. 234). Especially since the evidence showed that the defendant's husband in fact had exclusive possession of the automobile as against the defendant, I think that before the defendant could be guilty of the tort of conversion against the plaintiff and before a demand and refusal on her part could be shown to be conversion, there must also have been a demand made on the husband and a refusal on his part to redeliver. See 89 C. J. S. 562, Trover and Conversion, § 58 (c); Mitchell *v.* Williams &

Roberts, 4 Hill's Reports (N.Y.) 13; Jessop *v*. Miller (N.Y.), 1 Keyes 321.

I think that, under the evidence, a verdict was demanded for the defendant.

GARDNER, P. J., concurs in this dissent.