A00A1543. ALL ANGLES CONSTRUCTION & DEMOLITION, INC. v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.
(539 SE2d 831)

SMITH, Presiding Judge.

All Angles Construction & Demolition, Inc. appeals the trial court's grant of summary judgment in favor of Metropolitan Atlanta Rapid Transit Authority in an action by All Angles to recover damages for breach of a demolition contract. All Angles contends the trial court erred in awarding summary judgment to MARTA because genuine issues of material fact remain. We do not agree, and we affirm the summary judgment.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards.

(Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

All Angles contends MARTA breached the contract in three ways: (1) by failing to disclose that it did not own the property in issue and failing to prevent others from removing salvageable items from the property prior to demolition, thereby causing All Angles to lose salvage bargained for under the contract; (2) by failing to have the gas turned off at the site before issuing its Notice to Proceed,

thereby causing delay and extra equipment expense; and (3) by accelerating the contract from 30 days to 19 days. Under each of these theories of recovery, we conclude that MARTA showed that the evidence was insufficient to create a jury issue as to an essential element of the claims of All Angles. Summary judgment in favor of MARTA was therefore proper.

1. All Angles claims that the contract entitled it to remove items from the property to be demolished and salvage them and that it was denied this element of its anticipated profit.

William Moody, Jr., the owner of All Angles, testified on his deposition that he bid the job believing that MARTA owned the property and that the salvage items would become the property of the successful bidder. He claimed on his deposition, and now argues on appeal, that such a provision is the standard custom in the construction and demolition industry and the contract must be read as including this implied term. MARTA did not own this property, however, at the time of the bidding or demolition. And by the time the property was turned over to All Angles, most of the salvageable items had been removed from the property. All Angles attributes this loss either to the owners of the property removing the items or to MARTA's failure to secure the property from pilfering by third parties.

Both parties cite *Wood v. Frank Graham Co.*, 91 Ga. App. 621 (86 SE2d 691) (1955), a trover case in which usage of trade was offered to negate an allegation of conversion. All Angles cites the portion of the case stating that " 'the custom of a trade is admissible, not as ordinary parol evidence, but as law — entering into the contract just as any other law does.' " Id. at 623. But as noted by MARTA, *Wood* also provides that such "custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract." (Citation and punctuation omitted.) Id. at 624.

The Uniform Commercial Code deals with course of dealing and usage of trade as well. OCGA § 11-1-205 (2) provides, in pertinent part:

> A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts.

As asserted in *Wood*, unless the usage of trade is so well known that it may be judicially noticed, the burden of proving a usage of trade is on the party who asserts it. Id. at 624. While the usage of trade urged here may well exist, it is not so well known as to be judicially noticed.

And the only "proof" of such usage of trade was its assertion by Moody. Unlike the situation in *Wood,* it was not "proved by several witnesses" in the trade or industry and acknowledged by the opposing party. Id. at 627. No other witnesses testified to the usage of trade.

Shelley Christian, MARTA's Senior Real Estate Officer, who was in charge of this demolition project, testified on deposition that he was aware that demolition contractors made profit off salvage. But MARTA had no particular interest in or official position on salvage. MARTA was interested only in the return to it of the land itself, of the "dirt." Once the property was turned over for demolition, as long as the "dirt" was returned to MARTA on schedule, what was done with the property demolished was up to the contractor. This was insufficient to prove a usage of trade and create a question of fact for the jury. See *Ga. Timberlands v. Southern Airway Co.*, 125 Ga. App. 404, 406 (2) (b) (188 SE2d 108) (1972).[1]

2. All Angles makes a similar argument regarding custom and usage of trade with regard to the responsibility for ensuring that the gas was turned off at the property. It argues that the custom was that MARTA would have the gas turned off before issuing a notice to proceed. All Angles points to a prior instance, when MARTA made a "similar mistake" and issued to All Angles a notice to proceed on a demolition project before the gas had been turned off, resulting in All Angles rupturing a gas line and starting a fire. In that instance, MARTA reimbursed All Angles for its damages.

As with its arguments concerning salvage loss, however, All Angles has not provided any evidence of usage of trade other than the testimony of Moody, which is insufficient. *Ga. Timberlands*, supra. Moreover, the contract itself provides:

> The contractor shall be responsible for having taken steps reasonably necessary to ascertain the nature and location of the work, and the general and local conditions which can affect the work or the cost thereof. Any failure by the contractor to do so will not relieve him from responsibility for successfully performing work without additional expense to the Authority. The Authority assumes no responsibility for any understanding or representations concerning conditions made by any of its officers or agents prior to the execution of the contract, unless such understanding or representations by the Authority are expressly stated in the contract.

---

[1] We note that the complaint appears to suggest, alternatively, that MARTA represented to All Angles that salvage was included in the contract. But Moody admitted that no one from MARTA represented any such thing.

The quoted language does not expressly mention the term "utilities," as pointed out by All Angles. But gas flow to the property is clearly a condition that can affect the demolition work and therefore falls within the purview of this paragraph.

OCGA § 11-1-205 (4) provides, in pertinent part:

> The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade.

Even if All Angles had successfully established a usage of trade, therefore, the contract language would control.

On his deposition, Christian admitted paying All Angles for damage it incurred to equipment in the previous incident when the gas had not been turned off. He stated, however, that this payment was made in error since the same contract provision was in effect in the prior instance. Because he did not have the contract then, he was not aware of the provision, and he erroneously authorized payment. We cannot agree that All Angles should be rewarded for MARTA's past mistake that resulted in All Angles receiving a windfall.

Given the plain and unambiguous language in the contract, no material facts remain to create a jury question as to responsibility for ensuring that the gas was turned off prior to the start of demolition.

3. All Angles maintains that the record "clearly shows" that it suffered damages because MARTA accelerated the contract from 30 days to 19 days. The damages sought were again compensation for the profit All Angles expected to make by having more time to salvage items from the demolition site. Christian readily admitted that MARTA accelerated the contract. But even though All Angles received the notice to proceed on June 24, 1997, it did not start working on the project until "somewhere around the 7th, 8th or 9th of July," a delay of at least 13 days.

More importantly, since the contract did not provide for salvage and All Angles did not prove that it was entitled to salvage as a usage of trade, these damages would not be recoverable in any event. In addition, even had the damages been recoverable, it was necessary that the amount of such damages be established with reasonable certainty. *Post Realty Assoc. v. DSL Assoc.*, 228 Ga. App. 678, 679 (1) (492 SE2d 600) (1997). All Angles based its claim for acceleration damages upon the loss of time to recover salvage but did not show how much salvage it would have had or what it would sell for. It is the plaintiff's burden to show the damages, and the plaintiff cannot do this by resorting to "speculation, conjecture and guesswork." *Wipo,*

*Inc. v. Cook*, 187 Ga. App. 7, 9 (369 SE2d 306) (1988).

Finally, since All Angles presented a claim for lost salvage, any such recovery under the guise of "acceleration damages" would be a double recovery. As in the previously addressed claims, no question of fact remains for jury resolution as to this claim for damages.

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 25, 2000.

*Hughes & Bailey, David R. Hughes*, for appellant.
*Amy B. Meyer*, for appellee.