A96A2518. MORELAND v. TRAFFIC MASTERS, INC.
(483 SE2d 368)

RUFFIN, Judge.

Gene Moreland sued Traffic Masters, Inc. ("Traffic Masters") for commissions allegedly due under an oral employment contract. Traffic Masters denied liability and subsequently moved for summary judgment. The trial court granted Traffic Masters' motion, finding that "[u]nder Georgia law, the underlying employment contract was terminable at will; therefore, the promises upon which [Moreland] relied are unenforceable." Moreland appeals, and for reasons which follow, we reverse.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a

jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." (Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

In this case, the record shows that Traffic Masters, which is in the freight forwarding business, hired Moreland as a commissioned salesman in February 1992. In an affidavit, Moreland summarized his employment agreement with Traffic Masters as follows: "[a]s a commission sales person with [Traffic Masters], [I] was guaranteed compensation by Jeffery Towe, Vice-President of [Traffic Masters] on the basis of fifty (50%) percent of the profit generated by accounts [I] was instrumental in obtaining freight business for [Traffic Masters]." In responses to interrogatories, Traffic Masters similarly described Moreland's role as follows: "[h]is job was to call any and all potential accounts, obtain the information, and work them into a going account on a contractual basis." Towe acknowledged in an affidavit that Traffic Masters had an oral commission agreement with Moreland. Towe stated that when Moreland obtained a new account, he would confirm the rate schedule with Towe or Traffic Masters' President and they "would then agree on a percentage with the net income of the account as a commission to be paid to [Moreland] so long as he serviced the account, and the account was handled through [Traffic Masters]."

At the heart of this dispute is whether Moreland was entitled to commissions for generating business from McDonnell-Douglas. We note that it is undisputed that McDonnell-Douglas used Traffic Masters for some of its freight forwarding business. Although Moreland had a stroke and is no longer employed by Traffic Masters, he contends that he was not paid commissions for work performed on the McDonnell-Douglas account prior to his leaving. Traffic Masters contends that the verbal agreement was terminable at will and that, in any event, there is no evidence Moreland was entitled to commissions for obtaining and servicing the account.

Although Traffic Masters and the trial court are correct that Moreland's oral employment contract was terminable at will, "an employee may sue on an oral contract for employment terminable at will 'for the amount of compensation due him, based upon services actually performed by him up to the time of his discharge. . . .'

[Cit.]" *E. D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357, 359 (2) (359 SE2d 148) (1987).

We find that there are a number of unresolved conflicts in the evidence concerning Moreland's performance that preclude summary judgment for Traffic Masters in this case. Traffic Masters stated in responses to interrogatories that "[Moreland] was not required to call on and service any accounts[ ]" and that he "never" performed the work necessary to obtain new accounts. Traffic Masters admitted, however, that "[Moreland] did . . . call on the following house accounts from time to time at the request of [Traffic Masters]: McDonnell-Douglas. . . ." Traffic Masters further stated that after McDonnell-Douglas began doing business with Traffic Masters, Moreland "called on McDonnell-Douglas once or twice a month up to the time that [he] had a stroke in the first part of 1995." In responses to interrogatories, Moreland stated that he "called on John Hinkley at McDonnell-Douglas at least twice per month to solicit their business and ultimately began to get the business from McDonnell-Douglas. . . . No one else at Traffic Masters, Inc. contacted McDonnell-Douglas until after I had already secured this business for Traffic Masters, Inc."

It is unclear from this evidence whether Moreland merely serviced the McDonnell-Douglas accounts or whether he also generated new business. And, although Traffic Masters asserted that Moreland "never" performed his job of calling on potential accounts to obtain information, Traffic Masters stated in response to interrogatories that "[i]n attempting to obtain the McDonnell-Douglas account for [Traffic Masters], [Moreland] made the first call to solicit information that he could obtain so that [Traffic Masters] and he could make efforts to actually close the account and obtain a contract with the account."

Other evidence in the record also shows that Moreland might have earned commissions by securing McDonnell-Douglas' business. Moreland stated in an affidavit that he "was instrumental in obtaining and retaining the account of McDonnell-Douglas for [Traffic Masters]." John Hinkley, a McDonnell-Douglas representative, also testified in his deposition that based on Moreland's initial representations, McDonnell-Douglas started using Traffic Masters for some of its freight forwarding business and that Moreland had a "role" in the business between the two companies. This evidence, and the reasonable inferences from it, create a factual issue concerning whether Moreland earned any commissions by calling on McDonnell-Douglas as a potential account, gathering information, and obtaining McDonnell-Douglas contracts with Traffic Masters. Accordingly, the trial court erred in granting Traffic Masters' motion for summary judgment on Moreland's claim for commissions allegedly earned. See

*Keith*, supra.

Finally, Traffic Masters points to evidence showing that Moreland received some compensation during his employment and argues that this compensation constituted an accord and satisfaction of Moreland's claim for commissions on the McDonnell-Douglas account. Accord and satisfaction, however, "is an affirmative defense which must be set forth in pleading to a preceding pleading. Where not pleaded, it is waived." (Citations and punctuation omitted.) *George v. Roberts*, 220 Ga. App. 583, 584 (469 SE2d 249) (1996). Because Traffic Masters failed to plead the defense in this case, it was waived. See id.

*Judgment reversed. McMurray, P. J., and Johnson, J., concur.*

DECIDED MARCH 6, 1997.

*Parkerson, Shelfer & Groff, David B. Groff*, for appellant.
*Scott Walters, Jr.*, for appellee.