A01A0139. SHARPLE v. AIRTOUCH CELLULAR OF GEORGIA, INC.
(551 SE2d 87)

POPE, Presiding Judge.

Marlane Sharple brought this class action suit against AirTouch Cellular of Georgia, Inc. alleging that AirTouch's form contract for subscribing customers does not authorize AirTouch to always round

---

up partial minutes when it bills for cellular usage. Sharple alleges that AirTouch's billing technique results in millions of dollars of overcharges.[1]

In January 1997, Sharple contracted with AirTouch for cellular telephone service. The form contract provides that AirTouch would charge Sharple $14 per month plus usage fees of "46¢/Min" during peak time and "29¢/Min" during off-peak times. The contract does not say anything else about how partial minutes will be billed. It is uncontested that AirTouch bills only in whole minute increments; AirTouch stipulated that:

> "AirTouch bills for cellular air time in whole minute increments. If a customer is connected to the AirTouch cellular network for all or a portion of a minute, the customer is charged for the entire minute. For example, a customer is charged for three minutes if air time usage is either 2 minutes and 1 second or 2 minutes and 45 seconds."

The form contract contains a merger clause that states that: "This Agreement contains the entire agreement of the parties relating to the subject matter hereof and supersedes all prior discussions and agreements. Except as otherwise specifically set forth herein, this Agreement may not be amended except by a writing signed by both parties hereto." The agreement provides that it is to be governed by Georgia law.

In this suit, Sharple alleges that AirTouch breached its contract and violated the Uniform Deceptive Trade Practices Act by rounding all partial minutes up to the next minute. Sharple moved for partial summary judgment, and AirTouch moved for complete summary judgment on these claims. The court denied Sharple's motion and granted AirTouch's. In its order, the court reasoned that the contract provides that one minute is the "billing unit," that "the telecommunications industry historically has used this 'whole-minute' pricing and billing concept," and that Sharple's contract did not contain a provision for conventional rounding. Further, the court stated that, if it were to find a conventional rounding provision by implication, it would conflict with another provision of the contract that provides that the customer is responsible for all charges and fees on all calls. Under Sharple's argument, the court reasoned, she would pay noth-

---

[1] Sharple represents a class of Georgia AirTouch customers who were not members of a similar class of plaintiffs in *Cohen v. AirTouch Cellular,* Civil Action No. 972438, California Superior Court of San Francisco County. See *Smith v. AirTouch Cellular of Ga.,* 244 Ga. App. 71 (534 SE2d 832) (2000) (physical precedent only). The record in this case shows that only members of the class in the *Cohen* case were affected by the summary judgment order at issue in *Smith.*

ing for calls less than 30 seconds. The court concluded that the contract "unambiguously provided that a minute was the unit by which air time would be sold." Sharple appeals.[2]

"An issue of contract construction is at the outset a question of law for the court." *Grier v. Brogdon,* 234 Ga. App. 79, 80 (2) (505 SE2d 512) (1998). The first step is to look to the four corners of the instrument to determine the meaning of the agreement from the language employed. *Terry v. State Farm Fire &c. Ins. Co.,* 269 Ga. 777, 778-779 (2) (504 SE2d 194) (1998). "The cardinal rule of contract construction is to ascertain the intention of the parties." (Punctuation omitted.) *Amstadter v. Liberty Healthcare Corp.,* 233 Ga. App. 240, 242 (1) (503 SE2d 877) (1998); OCGA § 13-2-3.

If the contract language is ambiguous, the court must apply the applicable rules of construction. *Grier,* 234 Ga. App. at 80; OCGA § 13-2-2. Even in the case of ambiguous contracts, unless such ambiguity remains after the trial court has applied all rules of construction, there is no jury question. *Dorsey v. Clements,* 202 Ga. 820, 823 (44 SE2d 783) (1947). See also *Kobryn v. McGee,* 232 Ga. App. 754, 755-756 (1) (503 SE2d 630) (1998) ("When the trial court can apply statutory rules of construction to the express terms of the [contract] to reach only one legal meaning, no ambiguity exists."). And, normally, only if the ambiguity is not resolved by application of the rules of construction may parol evidence be introduced to explain the agreement. Id. at 756 (4). See also OCGA §§ 13-2-2 (1); 24-6-1. "Parol evidence is admissible to explain all ambiguities, the question as to what was intended being an issue of fact for the jury." (Citations and punctuation omitted.) *Karlan, Inc. v. King,* 202 Ga. App. 713, 715-716 (1) (415 SE2d 319) (1992).

Sharple asserts that the contract is silent about how partial minutes will be billed, and that accordingly, the contract implies that conventional rounding will be used. AirTouch argues that there is no ambiguity. It offers services by the minute, the customer buys them by the minute, and, therefore, "because a whole unit is sold, there is nothing to 'round.' " We disagree with both parties.

The essence of AirTouch's argument is that the unit of measure contained in the price provision of the contract, i.e., minutes, necessarily establishes that AirTouch sells and bills only in whole minute increments of time. But, there is simply nothing in the contract to support that conclusion. Nor is there any indication of how fractional minutes will be handled. Moreover, there are too many everyday examples of situations where AirTouch's interpretation is not com-

---

[2] We are not called to address any possible federal preemption issues. See, e.g., *Ball v. GTE Mobilnet of California,* 81 Cal. App.4th 529 (96 Cal. Rptr.2d 801) (2000); *In re Comcast Cellular Telecommunications Litigation,* 949 FSupp. 1193 (E.D. Pa. 1996).

monly accepted to justify AirTouch's position. In numerous situations where the customer is quoted a price per a certain unit of measure, the unit of measure given does not indicate that the seller sells only in whole unit increments. For example, a quote of the price per pound for produce in the grocery store does not imply that the store is selling produce only in whole pound increments. The same holds true for auto fuel by the gallon, hardware items by the pound or by the foot, attorney fees by the hour, and numerous other items that are not obviously packaged and sold in certain quantities. In all of these situations, it is quite reasonable to conclude that although the good is priced in a certain unit, if you wish to purchase a fraction of that unit, you will be charged only for the fractional amount. AirTouch's preferred construction of its agreement is not in line with common experience.

The analogies offered by AirTouch are not persuasive. AirTouch argues that if a store offers oranges for "$2.00 per bag," "the shopper must pay for the entire bag, even if he or she wants less than all the oranges." But, in this example, oranges are obviously packaged and sold in a certain quantity, by the bag. A bag is a container, not just a unit of measure. And, the indication "per bag" reasonably shows both the price and that the quantity offered is a whole bag. But, in AirTouch's contract, the indication "46¢/Min," standing alone, simply cannot be read to indicate that AirTouch offers time only in whole minute increments.

AirTouch contends that parking garages "typically charge by the hour or by the month, selling in whole hour or whole month increments, without any provision for rounding." But Sharple offered photographs of several examples, including some cited by AirTouch, that show that many parking garage signs state that a person will be billed by a certain unit of time "or any portion of the next [unit of time]." There is no such indication in AirTouch's form contract.

Sharple's preferred construction of the agreement is also not clear from the face of the agreement. There is nothing in the agreement to indicate that conventional rounding will be used. And, as noted by the trial court, conventional rounding could lead to some anomalous results such as there being no charge for a call of less than 30 seconds.

Therefore, we find that the agreement is ambiguous. See also *Mann v. GTE Mobilnet of Birmingham*, 730 S2d 150, 155 (Ala. 1999) (cellular contract providing for a rate "per minute" was ambiguous with regard to rounding). We further conclude that the court's finding that "the telecommunication industry historically has used this 'whole-minute' pricing and billing concept" to be unsupported in the record. The only evidence in the record is two tariffs for land-line long distance carriers, not cellular carriers, and they represent the

tariffs of those two carriers at only one point in time. Traditional long distance carriers and cellular providers face somewhat different federal regulations regarding tariffs, and therefore, this evidence is only marginally relevant to the question at hand.[3] Furthermore, both tariffs clearly state that the customer will be billed an amount per minute "or any fraction of a minute." We find no information in the record about the history of cellular billing practices.

The Uniform Commercial Code explains: "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts." OCGA § 11-1-205 (2). Similarly, "[t]he custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract." (Citation and punctuation omitted.) *Wood v. Frank Graham Co.*, 91 Ga. App. 621, 624 (86 SE2d 691) (1955). The evidence presented here is insufficient to establish a practice with a "regularity of observance." See, e.g., *All Angles Constr. &c. v. MARTA*, 246 Ga. App. 114, 115-116 (1) (539 SE2d 831) (2000).

The quotation from *Alicke v. MCI Communications Corp.*, 111 F3d 909 (D.C. App. 1997), cited by AirTouch is taken out of context and does not establish an industry practice as a matter of fact in this case.[4] Finally, no one requested that the trial court take judicial notice of any usage of trade. See *Graves v. State*, 269 Ga. 772 (504 SE2d 679) (1998).

Accordingly, there is an issue of fact regarding whether there was a usage of trade that Sharple either knew or had reason to know.[5] If there was, that usage would preclude use of the rule

---

[3] See generally *Tenore v. AT&T Wireless Svcs.*, 136 Wn.2d 322, 334, n. 51 (962 P2d 104, 109-110) (1998) (cellular telephone service providers are specifically exempted from tariff filing requirements by the Federal Communications Commission).

[4] In *Alicke,* the court stated, "MCI lists the length of each phone call in whole-minute increments — which, the court notes and counsel for Alicke confirmed at oral argument, is how long-distance service has always been listed and billed until some companies began recently to bill in smaller increments." *Alicke,* 111 F3d at 912. First, this quotation refers to the invoices themselves, not the contract to pay for the services. Second, the quotation refers to long distance carriers, not cellular. Third, the quotation indicates that some companies have begun to bill in smaller increments. *Alicke* was decided in 1997, which is the year that Sharple entered into a contract with AirTouch. Trade usage can change with time. The *Alicke* decision hardly establishes as a matter of fact the regular practice of the cellular industry relative to Sharple's claims.

[5] "[C]ustom of the trade may be shown notwithstanding . . . a provision in the contract that all conditions and agreements between the parties thereto, either oral or written, are contained in the contract." (Citation and punctuation omitted.) *Wood*, 91 Ga. App. at 625. And, the burden of proving a usage of trade is upon the party asserting it. *All Angles*, 246 Ga. App. at 115 (1).

whereby an ambiguous agreement is construed against the maker.

Because there are material issues of fact regarding the meaning of the contract, the court erred by granting AirTouch's motion for summary judgment but correctly denied Sharple's motion.

*Judgment affirmed in part and reversed in part. Blackburn, C. J., and Mikell, J., concur.*

DECIDED JUNE 27, 2001.

*Roberts, Erck & Schklar, Edwin J. Schklar, Carr, Tabb, Pope & Freeman, W. Pitts Carr, Render C. Freeman*, for appellant.

*Sutherland, Asbill & Brennan, James R. McGibbon, Kristen J. Indermark*, for appellee.