A08A0459. KERWOOD v. DINERO SOLUTIONS, LLC.

(666 SE2d 40)

MILLER, Judge.

Wayne D. Kerwood appeals from the trial court's grant of summary judgment against him and in favor of his former employer, Dinero Solutions, LLC ("Dinero"), on Kerwood's claim for breach of contract. We reverse, finding that the trial court erred in holding that the contract clause at issue was unenforceable as a matter of law.

In reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the evidence. *Mathews v. Marietta Toyota*, 270 Ga. App. 337 (606 SE2d 862) (2004). To prevail, the moving party must demonstrate that there is no genuine issue of material fact and that the evidence, and all reasonable conclusions and inferences drawn from it, viewed in the light most favorable to the nonmovant, entitle it to judgment as a matter of law. Id. Similarly, the construction of a contract, including the existence or nonexistence of any ambiguities found therein, represents a question of law for the court, subject to a de novo standard of review on appeal. See *Coker v. Coker*, 265 Ga. App. 720, 721 (595 SE2d 556) (2004); *Jaraysi v. Yates*, 206 Ga. App. 217, 218 (424 SE2d 793) (1992).

So viewed, the evidence shows that Dinero is a consulting firm that employed Kerwood as an executive vice president from May 2005 until May 2006. Kerwood negotiated the terms of his employment contract with Chris Goeckel, Dinero's CEO and owner (the "Contract"). Kerwood and Goeckel also served as the two members of Dinero's "Management Team." The Contract provided that Kerwood would be paid an annual, base salary of $160,000 as well as "variable compensation," to be calculated on a quarterly basis. With respect to variable compensation, the Contract stated:

> It is the intent of Dinero Solutions to fairly . . . recognize, reward, and retain its Management Team based on the achievement of the Company's Strategic Plan, Financial Goals, and individual contributions.

Accordingly, Dinero Solutions' Management Team will construct a financial model of the Company's Earnings before Tax using Actuals Based Accounting. This model shall identify special monies and any weightings *that do not represent [a] 50/50 split by project for the two members of the [M]anagement [Team]* and shall include the following components:

> Including SAG[1] mutually agreed to by the Management Team
>
> Less planned or extraordinary reserves agreed to by the Management Team.
>
> A baseline of this model is included in Attachment A.

(Emphasis supplied.)

The Contract further provided that, in the event Dinero terminated Kerwood's employment, Kerwood would continue to receive variable compensation "for all identified projects [Kerwood] is associated with in the Variable Compensation Model." Such payments were to start one month after Kerwood's termination and continue "until all such projects are completed or terminated by the client," or until twelve months after Kerwood's termination date.

Kerwood testified that, under the terms of the variable compensation clause, he was to receive 50 percent of the profits on all projects Dinero brought in during his tenure, with the profits for each project being determined by using Attachment A to the Contract. Attachment A, in turn, was a series of spread sheets that allowed Kerwood and Goeckel to determine a project's profits using expenses, costs associated with selling the project, costs associated with staffing the project, and revenues received.

Kerwood explained that the "financial model" referenced in the variable compensation clause as being developed in the future was to be used on projects where either he or Goeckel did a disproportionate share of the work (i.e., "special weightings") or where they decided to pay a Dinero employee a bonus (i.e., "special monies"). Until that model was developed, however, the profits on each project brought in during Kerwood's tenure were to be split equally between Kerwood and Goeckel.

---

[1] According to Kerwood, the acronym "SAG" referred to "sales/administrative/general" and the parties understood this term to refer to the costs or expenses associated with a particular project.

Kerwood further testified that during his employment at Dinero, he was paid variable compensation on at least one project and that the amount of that compensation was determined using Attachment A to the Contract. Kerwood's is the only testimony of record and is therefore undisputed.

After it terminated Kerwood's employment, Dinero refused to pay him any variable compensation associated with profits earned on projects brought in during Kerwood's tenure. Kerwood initiated the current action, claiming breach of contract and seeking to recover between $628,700 and $780,000 in variable compensation.[2]

Dinero moved for summary judgment, asserting that the variable compensation clause represented an "agreement to agree in the future" and was therefore unenforceable as a matter of law. The trial court agreed and granted Dinero's motion, finding that, because it contained no "fixed formula for determining future compensation," the Contract was too indefinite to be enforced. This appeal followed.

Kerwood argues that the trial court erred in granting summary judgment to Dinero because the evidence showed the existence of material issues of fact as to: (i) whether the parties intended that Kerwood receive 50 percent of the profits for projects booked after he began work for Dinero, using Attachment A to the Contract to calculate the profits for each such project; and (ii) whether the payment of variable compensation to Kerwood of 50 percent of the profits of a project, calculated using Attachment A, obviated any indefiniteness in the variable compensation clause. We agree.

The trial court's ruling was based on the general requirement that a promise of future compensation must either "be for an exact amount or based upon a formula or method for determining the exact amount of the [compensation]." (Citation and punctuation omitted.) *Arby's, Inc. v. Cooper*, 265 Ga. 240, 241 (454 SE2d 488) (1995). Applying that principle, the trial court concluded that the Contract "has no fixed formula to determine future compensation; it only establishes general guidelines for future compensation *based on a financial model that was not created, and based on discretionary factors that the [M]anagement [T]eam would later agree upon.*" (Emphasis supplied.)

This conclusion, however, ignores the fact that the "future" language of the variable compensation clause could be interpreted to apply only to those projects on which the two members of the Management Team were *not* going to split the profits on a 50/50

---

[2] The complaint alleges that Kerwood cannot determine the exact amount of variable compensation owed without documents in the possession of Dinero.

basis. In light of this ambiguity, the trial court erred in finding the Contract unenforceable.

> The test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon. Moreover, it is unnecessary that a contract state definitively and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves.

(Citations and punctuation omitted.) *Pacrim Assoc. v. Turner Home Entertainment*, 235 Ga. App. 761, 764 (1) (510 SE2d 52) (1998). "The cardinal rule of contract construction is to ascertain the intention of the parties." (Citation and punctuation omitted.) *Sharple v. AirTouch Cellular of Ga.*, 250 Ga. App. 216, 218 (551 SE2d 87) (2001). Thus, where a contract is ambiguous, "parol evidence may be offered to show the intent of the parties" (*Touche Ross & Co. v. DASD Corp.*, 162 Ga. App. 438, 439 (1) (292 SE2d 84) (1982)), and the question of what the parties intended becomes a factual issue for the jury. *Jones v. Hill*, 246 Ga. App. 194, 196 (539 SE2d 893) (2000). This rule reflects the "well-settled . . . policy of the law . . . against the destruction of contracts on the ground of uncertainty if it is possible in the light of the circumstances under which the contract was made to determine the reasonable intention of the parties." (Citations and punctuation omitted.) *McLean v. Continental Wingate Co.*, 212 Ga. App. 356, 358 (1) (442 SE2d 276) (1994).

Here, the only evidence of the parties' intent was the testimony of Kerwood. Given that this testimony was unrefuted, and that Kerwood was not the movant on the motion for summary judgment, it must be taken as true for purposes of deciding that motion. See *Mathews*, supra, 270 Ga. App. at 337.

Assuming that Kerwood's interpretation of the variable compensation clause is correct, and he was entitled to 50 percent of the profits on the Dinero projects initiated during his tenure, the question becomes whether there was an agreed-upon method or formula for calculating such profits. Kerwood claims that Attachment A to the Contract represented the agreed-upon method for calculating the profits of each project. This testimony is sufficient to create a material question of fact as to this issue.

In response, Dinero appears to argue that Attachment A was merely a spreadsheet for the insertion of numbers, and because the amount entered for any given item was discretionary, Attachment A does not represent a "specific formula or method" for calculating the

profits of individual projects. Assuming the truth of this assertion, it does not entitle Dinero to summary judgment, because the absence of an explicit formula for calculating the profits of each project does not render the Contract unenforceable. See *McLean*, supra, 212 Ga. App. at 359 (1) (finding enforceable an employment contract that did not set forth a formula for determining the "net proceeds" an employee was entitled to because "the parties, based upon their past dealings, understood the meaning of the term 'net proceeds,' and the method of establishing the percentage of profits due [the employee] for his services").

Here, there is at least some evidence of the parties' past dealings that would tend to prove that they understood the method of establishing the percentage of profits due Kerwood for his services. *McLean*, supra, 212 Ga. App. at 359 (1). Specifically, Kerwood testified that the parties used Attachment A to the Contract to calculate the amount of variable compensation due him on at least one project, and that he received payments based on those calculations. Thus, Kerwood is entitled to have a jury determine whether the parties' performance under the variable compensation clause was sufficient to render it enforceable. See *Tattersall Club Corp. v. White*, 232 Ga. App. 307, 310 (1) (b) (501 SE2d 851) (1998) ("part performance of [a] contract is sufficient to validate an otherwise vague and objectionable document, provided that the part performance itself relates to the contested clause") (citation and punctuation omitted); *Pine Valley Apts. Ltd. Partnership v. First State Bank*, 143 Ga. App. 242, 245 (237 SE2d 716) (1977) ("the objection of indefiniteness [to a contract] may be obviated by performance and acceptance of performance") (citation and punctuation omitted).

In light of the foregoing, we find that there exist material issues of fact as to (i) whether the parties intended that Kerwood receive 50 percent of the profits for projects booked after he began work for Dinero; (ii) if so, whether the parties intended that Attachment A be used to calculate the profits on each project for the purpose of determining Kerwood's variable compensation; and (iii) whether the previous payment of variable compensation to Kerwood of 50 percent of the profits of a project, calculated using Attachment A, obviated any indefiniteness otherwise existing in the variable compensation clause. We therefore reverse the trial court's order granting summary judgment in favor of Dinero and against Kerwood.

*Judgment reversed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JUNE 25, 2008 —
RECONSIDERATION DENIED JULY 16, 2008

*Bovis, Kyle & Burch, Melanie M. Norvell*, for appellant.
*Thomas G. Tidwell*, for appellee.