**SECOND DIVISION**
**REESE and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 22, 2019**

# In the Court of Appeals of Georgia

A19A0159. PHILLIPS v. ADAMS, JORDAN & HERRINGTON, P.C.

RICKMAN, Judge.

In this suit for employment compensation, George Phillips appeals the grant of summary judgment in favor of his former employer, a law firm. The trial court held that the written agreement between the parties was not enforceable and that Phillips was not entitled to quantum meruit. For the reasons that follow, we affirm in part and reverse in part.

Summary judgment is warranted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the

nonmoving party." (Citations and punctuation omitted.) *Smith v. Found*, 343 Ga. App. 816, 817 (806 SE2d 287) (2017).

So construed, the evidence shows that Phillips retired following a 25-year career practicing medicine, specializing in obstetrics and gynecology. Some years later, he enrolled at Mercer University School of Law, and, for the summers during law school, he obtained an unpaid clerking position with Adams, Jordan & Herrington, P.C., a personal injury law firm located in Macon comprised of three shareholder/partners, an associate, and other staff. After Phillips graduated, passed the Georgia Bar examination, and became a licensed attorney, he asked the firm about employment and was offered and accepted a job as a contract associate working primarily on medical malpractice cases that were handled on a contingency fee basis.

The terms of the December 16, 2013 employment agreement were stated on the first page of a two-page letter.[1] The letter agreement provided that "upon successful resolution" of a case, Phillips would be paid a "portion of the fee," "on a case by case basis," based on "the extent" of his work on the case:

---

[1] Phillips began his employment approximately two or three weeks earlier.

I am writing this letter to confirm your relationship with the firm. As of the date of this letter, you have joined the firm as a contract associate. We have agreed that in lieu of a stated salary your compensation as a contract associate will be production based and outcome determinative. You will primarily work on medical malpractice cases at the firm and you will be paid upon successful resolution of the cases in which you are involved. Your portion of the fee will depend on the extent of your work on the case and will be determined on a case by case basis. The firm will be responsible for all case expenses.[2]

The agreement provided that it could be terminated by either party "upon thirty (30) days written notice." Caroline Herrington, a partner in the firm, drafted the letter agreement.

After working for several months, the firm paid Phillips $10,000 as an "advance." But Phillips did not receive any other compensation during his first twelve months with the firm.

In a meeting in late 2014 with James Jordan, another partner, Phillips explained that he needed to show a bank that he had income of at least $6,000 a month to obtain a construction loan and subsequent mortgage to finance building a home. As a result of the meeting, Phillips understood that Jordan had agreed, on behalf of the firm, to

---

[2] The firm also agreed to pay all overhead costs and malpractice insurance.

begin paying Phillips a semi-monthly salary as an advance on compensation under the December 2013 agreement, with the understanding that his future share of compensation from successful cases would be reduced accordingly. Jordan averred, however, that Phillips simply wanted to convert to salaried employment and that the December 2013 contract terminated at that time. Jordan averred that as a consequence of the change, Phillips was "not entitled to anything" for the first eleven or twelve months that he worked at the firm, despite the fact that the firm was satisfied with Phillips's work prior to the change. As a result of the meeting, effective December 1, 2014, the firm began to pay Phillips twice a month at a rate of $80,600 a year; Phillips, however, did not begin to receive other routine benefits of employment at that time. Also, the firm did not give Phillips written notice of termination of the December 2013 agreement, as required therein.

At the time Phillips began to receive a salary, three significant cases upon which Phillips had worked were close to settlement. In the early months of 2015, the firm recovered on the three cases, but when Phillips asked about his share he "[n]ever got a straight answer." In July 2015, Phillips submitted a letter to the firm requesting compensation in accordance with the December 2013 agreement. Not satisfied with the firm's response, he tendered his resignation via letter on July 31, 2015. The firm

responded in writing that Phillips had asked to be put on a straight salary as opposed to remaining under the December 2013 agreement.

Phillips eventually filed suit against the firm, asserting alternative claims of breach of contract and quantum meruit. The firm later moved for summary judgment, and, following a hearing, the court granted summary judgment in favor of the firm on both claims. The court held that the dispute as to whether the salary paid to Phillips was an advance on future payments under the December 2013 agreement was not relevant to resolution of the case because the December 2013 agreement was too indefinite to be enforced. The court further held that Phillips was not entitled to quantum meruit for his work at the firm because there was no dispute that the parties had a contractual agreement, and quantum meruit is not an available remedy when there exists an express contract for the same work. Phillips appeals both rulings.

1. Phillips contends the trial court erred by holding that the December 2013 agreement was too indefinite to be enforced.

To be enforceable, "the promise of future compensation must . . . be for an exact amount or based upon a formula or method for determining the exact amount of the [payment]." (Citation and punctuation omitted.) *Arby's, Inc. v. Cooper*, 265 Ga. 240, 241 (454 SE2d 488) (1995). The rationale for this rule "is that the sum of money

5

to be paid for performance of services under a contract should be definitely and objectively ascertainable from that contract." Id. Where the basis for rendering certain a payment of future compensation "is at least in part afforded by a future exercise of discretion. . . , the promise [of future compensation] amounts to a promise to change the terms of compensation in the future and, thus, is an unenforceable executory obligation." Id.

Although Phillips strongly argues that the December 2013 agreement provided a formula for calculating compensation, in his brief in the trial court, Phillips admitted that the firm retained some discretion in how compensation would be calculated. In addition to this admission, Phillips's own testimony shows that the December 2013 agreement provided, at best, only a partial formula for calculating compensation. Although the agreement provided that he would be paid a "portion of the fee," "on a case by case basis," based on "the extent" of his work on the case, he testified that he understood that compensation under the agreement "would be fairly determined by the partners, based on [his] work" on a case, which implies discretion by the partners. When asked whether his compensation would be determined as "an hour-by-hour calculation, comparing the amount of your work versus other people in the firm," Phillips replied, "[I]t was more broad than that. It was based on my degree

6

of involvement both as a physician and an attorney on a case." Yet the agreement does not provide a way to value Phillips's involvement as a physician versus his value as an attorney. Furthermore, according to Phillips, the firm does not track billable hours, so Phillips "assumed" that the firm would have to look at pleadings and other documents to formulate a percentage that would show a person's involvement in a case.

Phillips also testified that he would expect the firm to calculate a fee that was fair based on the firm's and his own perception of the hours worked on a case, which implies that the parties would have to reach an agreement in the future, which belies that the agreement contains a formula. And he admitted that he was making assumptions about how the firm would determine percentage involvement in a case. Finally, the agreement does not define how to measure "the extent" of Phillips's work on a case. As his own testimony shows, it could be based on a simple analysis of hours worked or it could take into consideration other factors, such as Phillips's medical experience. Even construing the agreement against the drafter does not provide enough specificity such that a formula for calculating compensation can be determined.

Accordingly, the trial court did not err in determining that the December 2013 agreement constituted an unenforceable executory obligation. See *Arby's*, 265 Ga. at 241-242 (where agreement for future compensation was based partially on a formula and partially on the discretion of one party, the agreement was not enforceable); *Jackson v. Ford*, 252 Ga. App. 304, 306-307 (1) (a) (555 SE2d 143) (2001) (agreement to pay associate attorney a bonus of between 10 and 15 percent of contingency fees received in cases on which associate did "substantial" work was too indefinite to be enforced both because the firm retained discretion for setting the percentage within the range and because the agreement did not provide a method for determining what constituted "substantial" work). Compare *Dye v. Mechanical Enterprises*, 308 Ga. App. 311, 314 (708 SE2d 24) (2011) (contract enforceable where it contained no element of discretion concerning whether plaintiff would be paid a commission or how it would be computed; jury could determine the parties' agreement regarding how to calculate the commission).

2. We hold, however, that the trial court erred by granting summary judgment on Phillips's claim of quantum meruit. Evidence was presented to show that in the eleven or twelve months prior to when Phillips began receiving regular salary payments, as well as thereafter, he provided valuable services to the firm. And where

8

a contract between the parties is void for vagueness, quantum meruit is appropriate to compensate a party that provided a benefit to the other party associated with the failed agreement. See *Cochran v. Ogletree*, 244 Ga. App. 537, 539-540 (1) (536 SE2d 194) (2000) (where contract was void for vagueness, no binding contract ever came into existence, but party who rendered benefits under the contract under the good faith assumption of a valid contract was entitled to quantum meruit); see generally *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 28 (c) (485 SE2d 563) (1997) ("Quantum meruit is not available when there is an express contract; however, if the contract is void, is repudiated, or can only be implied, then quantum meruit will allow a recovery if the work or service was accepted and if it had value to the recipient.") (physical precedent only). Compare *Sapp v. Davids*, 176 Ga. 265 (168 SE 62) (1933) ("An express agreement denounced by law[, such as one contrary to public policy,] cannot be made legal and binding as an implied contract, by merely praying for a recovery on quantum meruit of a portion of the amount expressly agreed upon.").

Thus, if Phillips can prove at trial that the parties did not agree to terminate the original agreement when Phillips began to receive a salary in late 2014, he would be entitled to quantum meruit for the work performed under the void contract less any amount that he has already received.

*Judgment affirmed in part and reversed in part. Reese, J., and Markle, J., concur.*