**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 12, 2020**

# In the Court of Appeals of Georgia

A20A0599. MITCHELL & ASSOCIATES, INC. v. GLOBAL SYSTEMS INTEGRATION, INC.

BARNES, Judge.

This case arises out of a subcontractor agreement ("the Agreement") between Mitchell & Associates, Inc. and Global Systems Integration, Inc. ("GSI"). Mitchell filed suit seeking payment on certain invoices due under the Agreement. GSI counterclaimed, seeking a refund of amounts previously paid to Mitchell for unsatisfactory work, as well as the profits GSI lost as the result of Mitchell's failure to perform under the Agreement as promised. Mitchell now appeals from an order of the Cherokee County Superior Court granting it summary judgment on its breach of contract claim and granting GSI summary judgment on its counterclaims. Mitchell asserts that in granting judgment in favor of GSI, the trial court erred in finding that

the terms of the Agreement did not preclude GSI's claim for lost profits; in failing to apply the Agreement's ten-day notice provision to GSI's claim for a refund; and in refusing to give a March 2017 amendment to the Agreement retroactive effect. For reasons explained more fully below, we find no error in the trial court's conclusion that the Agreement did not bar GSI's recovery of the lost profits sought in this case. Accordingly, we affirm the trial court's grant of summary judgment to GSI on that claim. We further find, however, that the trial court erred in awarding GSI a refund of monies previously paid to Mitchell, because such damages were barred by GSI's failure to comply with the Agreement's ten-day notice provision. We therefore reverse that portion of the order awarding GSI a refund.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "In reviewing a grant or denial of summary judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions." *Muscogee County Board of Tax Assessors v. Pace Indus.*, 307 Ga. App. 532, 532-533 (705 SE2d 678 (2011). "Similarly, the construction of a contract, including the existence or nonexistence of any ambiguities found therein, represents a question of law for the court, subject to a de novo standard of review on

2

appeal."(Citations omitted.) *Kerwood v. Dinero Solutions*, 292 Ga. App. 742, 742 (666 SE2d 40) (2008).

The relevant facts are undisputed and show that GSI contracted with its client, AxleTech, Inc. ("the Client"), to provide certain technical and/or computer services. In July 2016, the parties entered the Agreement pursuant to which GSI subcontracted with Mitchell to provide some of those services. Paragraph 6 of the Agreement provided, in relevant part:

> 6. Professional Standards and Warranties. [Mitchell] warrants and represents that: (i) the Services will be performed with care, skill and diligence in accordance with the applicable professional or industry standards, will be technically accurate and complete, and will be in strict accordance with the requirements of any applicable Work Order pursuant to which [Mitchell] is providing the Services; . . . and (iv) as GSI's subcontractor, [Mitchell] will comply with all the obligations imposed upon GSI as if it stood in the shoes of GSI while performing the Services and shall not do anything that gives rise to a claim by GSI's Client that GSI is in breach of its obligations to the Client. In the event of any breach of the foregoing representations and warranties, GSI shall have, in addition to any remedies it may have at law, (i) the right to withhold fees payable to the extent GSI's Client withholds payment to GSI for any issue with [Mitchell's] work; and (ii) require [Mitchell] to[,] at GSI's discretion, either re-perform any Services which GSI believes, in its sole discretion, to be non-satisfactory, at [Mitchell's] expense or

3

refund/credit GSI for the costs of such Services to the extent actually paid by GSI. GSI will inform [Mitchell] regarding these issues within ten (10) working days.

The Agreement further provided, in Paragraph 19, that "[n]either party shall be liable to the other party under or in connection with this Agreement or any breach of the same in any manner for any indirect, consequential, special or punitive damages."

Between December 19 and 30, 2016, the Client informed GSI of a number of issues it had with Mitchell's services, and it subsequently refused to pay GSI for fees and expenses billed by Mitchell in December 2016 and early January 2017. GSI thereafter agreed to provide the Client with a revised invoice for the relevant time period, deleting Mitchell's time and expenses, and it provided the Client with that invoice on January 12, 2017. On March 2, 2017, Mitchell contacted GSI seeking payment of overdue invoices that Mitchell submitted under the Agreement. Mitchell then learned for the first time that the Client was unhappy with its work and was therefore disputing the fees and expenses GSI billed for Mitchell's December and January services. GSI explained that it was exercising its contractual right to withhold payment and credit the amounts currently owed against amounts previously paid to Mitchell for the unsatisfactory work. Mitchell responded that it would suspend work

4

under the Agreement until the payment issues were resolved, and requested an amendment to Paragraph 6 that deleted GSI's option of withholding payment or seeking a refund from Mitchell if the Client refused to pay for Mitchell's services. The following day, GSI emailed Mitchell that in an act of "good faith," GSI would pay the outstanding invoices. GSI also agreed to Mitchell's request to amend Paragraph 6 of the Agreement. Thus, effective March 3, 2017, Paragraph 6 was amended to provide that in the event Mitchell breached the provisions of that Paragraph, GSI's only remedy was to require Mitchell to re-perform its services, at Mitchell's expense. The ten-day notice provision found in Paragraph 19, however, remained part of the Agreement.

Mitchell continued to perform work under the Agreement until August 2017. After the Agreement ended, GSI refused to pay Mitchell's final invoices (totaling $37,500), claiming it was entitled to credit that amount against the amount previously paid Mitchell for unsatisfactory work. In doing so, GSI asserted that the parties' March 2017 amendment of Paragraph 6 did not apply retroactively – i.e., it did not apply to any unsatisfactory work performed prior to March 2017.

After GSI refused to pay its final invoices, Mitchell filed the current lawsuit, and GSI responded by filing its counterclaims. Following the close of discovery, the

5

parties filed cross-motions for summary judgment. The trial court held a hearing on those motions and subsequently entered an order granting Mitchell summary judgment on its claim for payment of the unpaid invoices and granting GSI summary judgment on its claims for lost profits and a refund of amounts previously paid to Mitchell.[1] Mitchell now appeals from that order.[2]

1. Mitchell asserts that the trial court erred in granting summary judgment in favor of GSI on its claim for lost profits. Specifically, Mitchell argues that the lost profits sought in this case represented indirect or consequential damages and were therefore precluded by Paragraph 19 of the Agreement. We disagree.

In a breach of contract action, lost profits are viewed as direct damages where those profits "represent the benefit of the bargain (such as a general contractor suing for the remainder of the contract price less is saved expenses)." *Imaging Sys. International v. Magnetic Resonance Plus*, 227 Ga. App. 641, 644 (1) (490 SE2d 124) (1997). Thus, "[a] party who has been injured by a breach of contract can recover

---

[1] The amount awarded Mitchell was $37,500, while GSI received an award of $9030 in lost profits and $62,402 in a refund of fees and expenses. Accordingly, the Court entered final judgment in favor of GSI and against Mitchell in the amount of $33,931.40.

[2] GSI did not file a cross-appeal.

profits that would have resulted from performance" of that contract. *Comtrol, Inc. v. H-K Corp.*, 134 Ga. App. 349, 352 (2) (214 SE2d 588) (1975). And here, Mitchell does not dispute that the lost profits sought by GSI are those profits the company would have realized on the work done by Mitchell for GSI's client, had Mitchell performed as warranted under the Agreement. Thus, because the profits at issue "can be traced solely to" Mitchell's breach of the Agreement "and are the immediate fruit of" that contract, they constitute direct, rather than consequential, damages. (Punctuation omitted.) *Aon Risk Services of Georgia v. Commercial & Military Sys. Co.*, 270 Ga. App. 510, 513 (3) (b) (607 SE2d 157) (2004). See also OCGA § 13-6-8. Accordingly, GSI's recovery of its lost profits was not barred by Paragraph 19, and the trial court did not err in granting summary judgment to GSI on this claim.

2. Mitchell further asserts that the trial court erred in granting summary judgment to GSI on its claim for a refund of fees and expenses previously paid to Mitchell under the Agreement. Specifically, Mitchell contends that GSI's failure to comply with the ten-day notice provision found in Paragraph 6 precluded GSI from recovering on its claim for any refund it was otherwise entitled to. We agree.

As noted above, after setting forth GSI's remedies for any unsatisfactory work performed by Mitchell, Paragraph 6 states that "GSI will inform [Mitchell] regarding

7

these issues within ten (10) working days."[3] The Agreement does not identify specifically when the that ten-day period begins to run – i.e., it does not identify the specific event that triggers the notice provision. To the extent that the language of the notice provision can be seen as ambiguous, however, "we resolve that ambiguity by applying the statutory rules of construction to ascertain the intent of the parties." *Willesen v. Ernest Communications*, 323 Ga. App. 457, 459 (1) (746 SE2d 755) (2013). Those rules require us to read the Agreement as a whole, construing "any ambiguities most strongly against the party who drafted the agreement," and giving the contract a "reasonable construction." (Citations and punctuation omitted.) Id. at 460 (1). See also OCGA § 13-2-2 (4), (5).

Applying these rules, we first note that GSI drafted the agreement. And, as a matter of logic, GSI could not provide Mitchell with any notice under Paragraph 6 until GSI learned of the Client's dissatisfaction. Moreover, to hold that the notice provision was not triggered until some subsequent event (such as the end of the contract) would render the provision meaningless. Accordingly, we interpret Paragraph 6 as meaning that the ten-day notice provision began to run at the time the

---

[3] In its order, the trial court did not address this ten-day notice provision.

8

Client informed GSI of its dissatisfaction with (and its refusal to pay for) the work Mitchell performed in December 2016 and January 2017.

The record shows that GSI was aware of the Client's dissatisfaction with (and its refusal to pay for) Mitchell's work no later than January 12, 2017 – the day on which it submitted the revised invoice to the Client. GSI, however, did not provide Mitchell with notice of the issues until March 2, 2017, at least 49 days after GSI first learned of the Client's dissatisfaction. Thus, GSI failed to comply with the ten-day notice provision and in doing so, GSI lost its contractual right to a refund of monies previously paid for Mitchell's unsatisfactory work. *Burritt v. Media Marketing Services*, 204 Ga. App. 848, 849 (3) (420 SE2d 792) (1992). See also *Forsyth County v. Waterscape Services*, 303 Ga. App. 623, 630 (2) (a) (694 SE2d 102) (2010) ("It is well established that a party to a contract may waive a contractual provision [that otherwise exists] for his or her benefit.") The trial court, therefore, erred in granting GSI summary judgment on its claim for a refund.

3. In light of our holding in Division 2, we need not address Mitchell's remaining claim of error.

For the reasons set forth above, we affirm that part of the trial court's order granting GSI summary judgment on its claim for lost profits but reverse that part of

9

the order granting GSI summary judgment on its claim for a refund of fees and expenses previously paid to Mitchell.

*Judgment affirmed in part; reversed in part. Gobeil and Pipkin, J. J., concur.*